**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Rufus GAINES, Defendant-Appellant.**

**No. 75–1466.**

United States Court of Appeals,
Seventh Circuit.

Argued Jan. 23, 1976.

Decided Feb. 13, 1976.

James B. Haddad, Chicago, Ill., for defendant-appellant.

John R. Wilks, U. S. Atty., Fort Wayne, Ind., Richard L. Kieser, Asst. U. S. Atty., South Bend, Ind., for plaintiff-appellee.

Before FAIRCHILD, Chief Judge, TONE, Circuit Judge, and HOFFMAN, Senior District Judge.*

* The Honorable Julius J. Hoffman, Senior District Judge for the Northern District of Illinois, is sitting by designation.

TONE, Circuit Judge.

This collateral review under 28 U.S.C. § 2255 presents the claim that petitioner was deprived of his sixth amendment right to the effective representation of counsel because of the divided loyalties of his retained trial counsel. The District Court denied relief. We reverse.

Rufus Gaines and two codefendants were convicted of robbing an armored truck carrying money insured by the Federal Deposit Insurance Corporation and murdering the driver, in violation of 18 U.S.C. §§ 2113(a) and (e), and were sentenced to life imprisonment. This court affirmed the conviction. *United States v. English,* 501 F.2d 1254 (1974). Gaines later filed a *pro se* § 2255 motion, which the District Court dismissed. While the motion raises several points, counsel appointed to represent Gaines on appeal has argued only the sixth amendment claim.

Gaines was arrested on March 8, 1972, some two and one-half months after the crime. On March 10 he orally confessed to participation in the crime and named Alexander English and Sam Hubbard, Jr. as the other participants. He said one of them killed the driver.

Thereafter the prosecutor offered to charge Gaines only with an offense carrying a maximum term of imprisonment of 25 years, which presumably meant that he would not be charged with the murder, if he would testify on behalf of the government. Later the prosecutor said he would "think about" recommending 20 years. Apparently Gaines said he would testify for the government.[1]

Complaints were then filed charging Hubbard and English with robbery and murder, and they were arrested. At the preliminary hearing on March 24 they were represented by an attorney (to whom we shall sometimes refer as "the attorney"), who also represented them on unrelated felony charges in other jur-

isdictions. Gaines had waived counsel and was as yet not represented. When the government called Gaines as a witness, he repudiated his confession. The attorney then moved for a dismissal of the charges against Hubbard and English. Upon the government's claim of surprise, the hearing was continued.

Ten minutes after the conclusion of the hearing, the attorney informed the prosecutor that he now also represented Gaines, as well as Hubbard and English. He filed an appearance as counsel for Gaines that same day.

On April 14 the government dismissed the complaints against Hubbard and English, and they were released from federal custody, Gaines, however, was indicted shortly thereafter and charged with murder as well as robbery.

In July the government moved to disqualify the attorney as counsel for Gaines, arguing in substance that the attorney's obligation to Hubbard and English impaired his ability to advise Gaines. The prosecutor stated that he hoped to present the question of Hubbard's and English's involvement in the crime to a grand jury, that he needed Gaines' testimony for that purpose, and added that the attorney "cannot deal with the Government as to Gaines when he also represents the other two men and has, therefore, a self-evident conflict of interest." The government also predicted that a conviction of Gaines with that attorney representing him would be vulnerable to a postconviction attack.

The attorney, while acknowledging his continuing representation of English and Hubbard in this and other pending matters, nevertheless insisted that he could adequately advise Gaines and characterized the motion to disqualify him as frivolous and libelous. Judge Grant denied the motion to disqualify.

Subsequently the grand jury returned an indictment against Hubbard, English, and Gaines, charging each of them with

---

1. The record does not unequivocally show that Gaines so stated, but his present counsel states that he did; and the government called Gaines at the preliminary hearing, presumably expecting favorable testimony.

murder and robbery. The earlier indictment against Gaines was later dismissed as superseded.

All three defendants were represented by the attorney and a co-counsel at the arraignment before Judge Grant on August 18. At that time the judge addressed each of the defendants individually and explained to them in general terms the dangers inherent in the representation of more than one defendant by the same counsel. Gaines stated in response to the court's questioning that he had discussed this problem with the attorney, that he was aware of his right to separate representation and knew that if he could not afford separate representation it would be provided to him without cost, and that he nevertheless wanted the attorney to continue to represent him. Pleas of not guilty were entered for all three defendants.

Before trial in November 1972 the attorney (to whom we shall now sometimes refer as "Gaines' attorney") withdrew as counsel for Hubbard and English, leaving his co-counsel to represent them, and his co-counsel withdrew as counsel for Gaines. A motion of Hubbard and English for severance was denied, and the trial proceeded against all three before the late District Judge George N. Beamer.

The government introduced in its case in chief the oral confession of Gaines, redacted to exclude references to Hubbard and English. Gaines testified on his own behalf, denying participation in the crime. The government then sought to use Gaines' unredacted confession in cross-examining him, arguing that since he was now on the witness stand there was no longer a confrontation problem under *Bruton v. United States*, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968). Counsel for Hubbard and English objected, and at that point the court recessed for the day.

The following morning, before proceeding in the presence of the jury, Judge Beamer told counsel he had found a case, *Nelson v. O'Neil*, 402 U.S. 622, 91 S.Ct. 1723, 29 L.Ed.2d 222 (1971), which supported the government's position. Stating the holding of the case to be "that once the confessor takes the stand, . . . you no longer have a *Bruton* problem," the judge ruled that the proposed cross-examination was proper.

In the ensuing colloquy, Gaines' attorney said that the rights of Gaines "are being denied if he doesn't take the stand in this case; he has to take the stand." He also said,

> "[H]ow could Rufus Gaines put in evidence that his confession was no good unless he took the stand. It is impossible.

> "And for him not . . . or for him to be denied his right to take the stand, because, if he did, then the other two codefendants are going to get literally 'screwed'—and that is a denial of his right."

The court adhered to its ruling. Gaines having already taken the stand and completed his testimony on direct examination, the government proceeded to cross-examine him about his accusation of Hubbard and English in his pretrial confession. The jury was unable to reach a verdict, and Judge Beamer declared a mistrial.

The case was reassigned for further proceedings to Judge Grant, who denied a motion on behalf of Hubbard and English for judgment of acquittal and alternatively for severance. In denying the motion for severance the court referred to *Nelson v. O'Neil, supra.*

At the second trial, held in January 1973, the alignment of attorneys and parties remained the same. The government again introduced Gaines' confession in redacted form. This time, however, Gaines did not testify. Thus the jury did not learn that he had named Hubbard and English in his confession. In addition, Hubbard and English were able to argue on appeal, albeit unsuccessfully, that the redaction had been ineffective and they had been denied their right of confrontation under *Bruton* (see 501 F.2d at 1263).

Gaines' attorney, although he did not call Gaines to testify, tried to offer evi-

dence that Gaines had repudiated his confession at the preliminary hearing, but the prosecutor's hearsay objection to this evidence was sustained. In closing argument, Gaines' attorney argued that Gaines had denied the crime. The prosecutor objected on the ground that there was no evidence of a denial. The judge resolved the objection by directing the jury to rely on its own recollection of the evidence.

After jury verdicts finding all three defendants guilty, each defendant filed a notice of appeal. The blue back on each of the three notices was imprinted with the name and address of Gaines' attorney. A motion for leave to appeal as a poor person and for appointment of counsel on appeal was filed for each defendant, each set of motion papers having a blue back imprinted with the name and address of Gaines' attorney. The motion papers are in many respects identical and appear to have been typed on the same typewriter. The affidavit of each defendant supporting the motion recites that affiant still owes "considerable attorneys fees to my lawyers who handled the charges against me on two separate trials and motions." In the affidavits of Hubbard and English, each of them described both attorneys as "the attorneys who have represented me during the course of all the charges against me," and asked that those attorneys "be appointed as counsel to prosecute my appeal." Gaines' affidavit names only the attorney who represented him at the trial as "the attorney who has represented me during the course of all the charges against me," and asks that he "be appointed as counsel to prosecute my appeal." The court appointed Gaines' attorney to continue representing him on appeal and the other attorney to contin-ue representing the other two defendants. This court affirmed the convictions.

Gaines argues that his attorney's loyalties were divided between him on the one hand and Hubbard and English on the other, and that as a result he was denied effective assistance of counsel at the time of his plea and in connection with the decision as to whether he should testify at the second trial.

■ We have no doubt that Gaines' attorney had conflicting duties which should have caused him to disqualify himself from representation of Gaines. When he undertook that representation he was already representing Hubbard and English, not only in the defense of other criminal charges but in the very proceeding in which he would represent Gaines. Gaines had implicated Hubbard and English in his confession. The attorney's subsequent withdrawal from his representation of Hubbard and English in this case did not remove the conflict. It continued to be his duty to refrain from taking any action adverse to their interests in a matter in which he had represented them. *Cf. Marketti v. Fitzsimmons,* 373 F.Supp. 637 (W.D.Wis. 1974); and *cf. A.B.A., Code of Professional Responsibility* DR5–105(A), (B). As events proved, he had to choose between alternative courses of action, one of which favored Gaines and the other Hubbard and English.[2] He chose the latter. Whether he did so with the deliberate intention of helping Hubbard and English at the expense of Gaines is immaterial. His representation of Gaines in the circumstances of this case created a serious conflict of interest.

In reaching that conclusion we need not rely on any inferences drawn from

**2.** If Gaines did not take the stand, his confession stood unretracted. If he did take the stand, it would be revealed on cross-examination, in view of the *Nelson* gloss on *Bruton,* that he had named Hubbard and English as his cohorts. Moreover, in the event of conviction and an appeal they would be deprived of their argument that despite the redaction of Gaines' confession to delete their names the jury would know they were the other two men referred to in the confession and thus their *Bruton* rights were violated. As it turned out, this court ultimately rejected that argument, but at the time Gaines' attorney had to decide whether to advise him to take the stand the preservation of that argument for appeal was clearly in the best interests of Hubbard and English.

the papers filed after the conviction. We cannot refrain from noting, however, that those papers, apparently drawn in the law office of Gaines' attorney, state that both he and the other attorney represented Hubbard and English "during the course of all the charges" against them, and requested that both attorneys or one of them be appointed to represent Hubbard and English on appeal. Viewing these papers in the most charitable light, they reflect a remarkable insensitivity to the problem which occupies our attention in this opinion.

 The sixth amendment guarantee of the assistance of counsel includes the right to counsel whose loyalty is not divided between clients with conflicting interests. *Glasser v. United States,* 315 U.S. 60, 70, 75–76, 62 S.Ct. 457, 86 L.Ed. 680 (1942); *Craig v. United States,* 217 F.2d 355, 358–359 (6th Cir. 1954). This is true whether counsel is court appointed, as in *Glasser* and in *United States v. Gougis,* 374 F.2d 758, 761 (7th Cir. 1967), or retained, as in *Zurita v. United States,* 410 F.2d 477 (7th Cir. 1969). See also *Larry Buffalo Chief v. South Dakota,* 425 F.2d 271, 279 (8th Cir. 1970).[3] Like other constitutional rights, this right may be waived, *Kaplan v. United States,* 375 F.2d 895, 897–898 (9th Cir. 1967), but the waiver must be deliberate and made with an understanding of the conflicting interests and the dangers resulting from them. *Craig v. United States, supra,* 217 F.2d at 359; *Larry Buffalo Chief v. South Dakota, supra,* 425 F.2d at 280.

When counsel is appointed by the court, the problems of conflicting interests can usually be avoided if the court, with advice from the prosecutor, carefully examines the available facts in light of the charges before appointing counsel for more than one defendant, and appoints separate counsel when there is any possibility of conflict. When counsel

is retained, however, another important facet of the sixth amendment guarantee comes into play, *viz.,* the right to counsel of one's choice. See *United States v. Wisniewski,* 478 F.2d 274, 285 (2d Cir. 1973). Compare *Pirillo v. Takiff,* 341 A.2d 896 (Pa.Sup.Ct.1975), *cert. denied,* —— U.S. ——, 96 S.Ct. 873, 47 L.Ed.2d 94, 44 U.S.L.W. 3424 (1976). The importance of this right of choice was recently underscored in *Faretta v. California,* 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975), which held that the sixth amendment gives a defendant in a criminal case the right to represent himself. Whether the holding in *Faretta* should be extended to require that the court accede to a defendant's choice of counsel in the face of a conflict of interest, thus tolerating not only a breach of professional ethics by counsel but representation which the court finds inadequate, is a question we need not decide today. Compare, however, *Pirillo v. Takiff, supra,* with *In re April 1975 Grand Jury,* 531 F.2d 600, 44 U.S.L.W. 2354 (D.C.Cir. 1976).

The trial court clearly does have an obligation, whether counsel is appointed or retained, to be alert for indicia of conflict at all stages of the proceeding, including during trial. *United States v. Mandell,* 525 F.2d 671, 677 (7th Cir. 1975). When the possibility of a conflict appears during trial, the court must investigate the relevant facts, advise the defendant, and determine whether continued representation, absent waiver, would violate the sixth amendment. *United States v. Jeffers,* 520 F.2d 1256, 1263 n. 11 (7th Cir. 1975). We declined in *Mandell* to adopt an automatic rule of the kind existing in the District of Columbia Circuit, see *Lollar v. United States,* 126 U.S.App.D.C. 200, 376 F.2d 243, 245–246 (1967), and *Campbell v. United States,* 122 U.S.App.D.C. 143, 352 F.2d 359, 360–361 (1965), which would

---

**3.** The fact that counsel is retained is, of course, a factor to consider in deciding whether the defendant has knowingly and intelligently waived his sixth amendment right. See *Larry Buffalo Chief,* cited in the text, 425 F.2d at

279 n. 5. *Cf. Foxworth v. Wainwright,* 516 F.2d 1072, 1076 n. 4 (5th Cir. 1975); *Fitzgerald v. Estelle,* 505 F.2d 1334 (5th Cir. 1975). But *cf. Craig v. United States, supra,* 217 F.2d at 359.

require the judge, at the outset of a criminal trial in which defendants are jointly represented, to conduct an inquiry on the question of knowing waiver of single representation. We left it the responsibility of the attorney, as an officer of the court, to initially inform his clients, of the dangers of multiple representation. Nevertheless, while the court's failure to initially warn the defendants is not itself error, it is apparent that the administration of criminal justice will be better served if possible conflicts can be discovered and dealt with before trial to avoid the risk of a mistrial.

Counsel's withdrawal from representation of some of the defendants, even if it occurs before trial, may not obviate the conflict problem. It does not do so if either his continuing duty to do nothing which would injure the interests of his former clients in connection with the subject matter of his representation of them or any other incentive to avoid injuring his former clients is in conflict with his duty of undivided loyalty to the client he continues to represent.

■ When an actual conflict appears, the court must bring the fact of its existence and the resulting dangers which are reasonably foreseeable to the attention of each affected defendant so he can make an informed judgment at that time as to whether he wishes new counsel or wishes to continue with present counsel.[4] Having done that, the court has fulfilled its duty and, if, despite the conflict and the attendant dangers, the defendant elects to continue with the same counsel, he thereby waives his sixth amendment right. Whether the court may disqualify counsel in these circumstances is, as we have said, a question we reserve for another day.

■ In the case before us the potential for conflict of interest was noted by the court at an early stage and pointed out to the defendants, but the court did not then anticipate all the dangers that might arise. Moreover, the warning referred to joint representation of several defendants, and after the warning was given Gaines' attorney withdrew from his representation of the other two defendants. Gaines could well have believed that the conflict problem no longer existed. After the first trial, the ethical dilemma of Gaines' attorney with respect to whether Gaines should be advised to testify had been brought to the attention of the court, and the court therefore had a duty to take remedial action. See *Fitzgerald v. Estelle,* 505 F.2d 1334, 1337 (5th Cir. 1975) (*en banc*). Gaines should then have been warned of the sharp conflict between his interest in testifying on the one hand and the interest of Hubbard and English in excluding the unredacted confession on the other hand, and he should have been given an opportunity to decide whether in light of that warning he wanted to continue having the attorney represent him. It cannot be assumed that in the absence of an adequate warning and explanation Gaines, an uneducated layman, would understand this problem or would relate it to the question of whether his attorney should continue to represent him.

■ It is significant that the facts of this case show not only that a conflict of interest existed but that Gaines' counsel made the choice that favored Hubbard and English. We recognize, of course, the principle stated in *Glasser,* 315 U.S. at 76, 62 S.Ct. at 467 that "[t]he right to have the assistance of counsel is too fundamental and absolute to allow courts to indulge in nice calculations as to the amount of prejudice arising from its denial." When, however, as in this case, the conflict does not relate to the result in the case (as in *Zurita v. United States, supra*) or permeate the entire case (as in *Glasser*) but relates only to one facet of the case, it is necessary to determine whether the defense may have been prejudiced. The only point at which Gaines' interest conflicted with that of Hubbard and English was his

---

4. What is said above applies to retained counsel. If counsel is court appointed, the court should eliminate the conflict by appointing new counsel for each defendant if necessary.

exposure to cross-examination about implicating them in his confession if he testified as a witness. If Gaines' counsel had called Gaines as a witness at the second trial, thereby selecting the alternative that was clearly not in the best interest of Hubbard and English, the existence of a conflict potentially damaging to Gaines would have proved harmless beyond a reasonable doubt. See *Chapman v. United States,* 365 U.S. 610, 81 S.Ct. 776, 5 L.Ed.2d 828 (1965).

When, however, Gaines' counsel chose the alternative that was in the best interest of Hubbard and English, the possibility that their interest influenced his decision would have been enough to establish prejudice to the defense. *Cf. Glasser, supra,* 315 U.S. at 78, 62 S.Ct. 457, quoted above. In fact, more than a possibility is apparent from the record. At the first trial Gaines' attorney, apparently unaware of *Nelson v. O'Neil,* had called Gaines as a witness and, after examining him on direct, had learned that Gaines would not be protected by the *Bruton* rule from cross-examination about having implicated Hubbard and English in his pretrial confession. He thereupon protested that Gaines "has to take the stand," but "if he did, then the other two codefendants are going to get literally 'screwed.'" Moreover, foreshadowing the decision he was to make at the second trial, he even suggested that allowing Gaines to be cross-examined about the unredacted confession would in effect deny Gaines his right to take the stand. The choice Gaines' attorney made at the second trial denied Gaines the opportunity to repudiate his confession and shielded Hubbard and English. The importance to Gaines of repudiating the confession appears from his attorney's attempt to inform the jury of the repudiation by offering hearsay evidence and the reference in summation to a repudiation not in evidence.

We recognize that the two trials were conducted by different judges of a busy court, and that the judge who conducted the second trial may understandably have been under the impression, when he returned to the case after a lengthy interval, that his initial warning to Gaines was enough. Our holding is not to be construed as a criticism of the conduct of either judge. There are, however, occasions when an injustice of constitutional magnitude occurs despite what appear at the time to be the best efforts of experienced and competent judicial and prosecutorial personnel. We conclude that Gaines cannot be said to have made a knowing waiver of his sixth amendment right to the effective assistance of counsel, in the absence of a specific warning of the serious danger to his defense posed by his attorney's conflict of interest.

It is theoretically possible that Gaines' attorney informed Gaines, before Gaines elected not to testify in the second trial, of the specific problem created by the conflict, and raised with him the question of whether he should be represented by counsel who did not have such a conflict. If that had occurred and Gaines had nevertheless continued with the same counsel, he would have waived his sixth amendment right. The existence of this theoretical possibility does not, however, make it appropriate for us to remand the case for an evidentiary hearing instead of ordering a new trial. An evidentiary hearing would force Gaines' attorney into a new conflict of interest in which his own personal and professional interest would be in conflict with his client's interest. While we should not presume that the attorney's testimony would be influenced by such a conflict, the appearance of justice would be ill-served by making Gaines' right to a new trial by reason of his attorney's conflict of interest perhaps dependent on whether that same attorney can rise above a new conflict involving his own interest. In view of this and of all the circumstances of the case, including the blindness of Gaines' attorney to the potential conflict when the prosecution first pointed it out, the indelible appearance of prejudice in what actually occurred, and the ambivalence of Gaines' attorney, evidenced by papers prepared after the second trial, about whether he

continued in fact to represent Hubbard and English after formally withdrawing as their counsel, we believe that justice can be satisfied only by ordering a new trial for Gaines.

 We reject, however, Gaines' argument that he was denied the effective assistance of counsel as to his plea and is therefore entitled to the benefit of the claimed plea bargain. In the first place, any plea bargain was subject to the approval of the district court, and it could never be known whether that court would approve, especially in the case of a defendant who had confessed to participation in an armed robbery resulting in a murder. Second, when Gaines withdrew from the plea bargain by repudiating his confession at the preliminary hearing, he was not yet represented by the attorney, at least to the court's knowledge. Neither the court nor the prosecution was responsible for advice secured by Gaines from a source of his own choosing without their knowledge. When Gaines later appeared for arraignment and pleaded not guilty, therefore, there was no plea agreement.

Moreover, it was at the arraignment that Judge Grant called the defendant's attention to the dangers of multiple representation. The warning was necessarily general at that stage. If it had been specifically addressed to the attorney's possible incentives for advising Gaines to plead not guilty, the court would have risked creating an appearance of attempting to coerce a plea of guilty. The general warning was sufficient to alert Gaines that his attorney, because he was also then representing the other two defendants, might not be the best source of advice for Gaines. The court could not compel Gaines to heed the warning.

Accordingly, Gaines' sixth amendment rights were not violated at the time of his plea, and he is not entitled to the benefits of a plea agreement, if such it was, which he chose to repudiate.

The motion under § 2255 is granted, and the case is remanded to the District Court with directions to vacate the judgment of conviction against Gaines and grant him a new trial.[5]

Reversed and remanded.

---

5. Circuit Rule 23 shall not be applied.