**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Joseph KIDDING and Earl Brown,
Defendants-Appellants.**

**Nos. 76–1895, 76–1921.**

United States Court of Appeals,
Seventh Circuit.

Argued Feb. 23, 1977.

Decided July 20, 1977.

Certiorari Denied Oct. 3, 1977.
See 98 S.Ct. 217.

---

7. This contention disregards the possibilities of commutation or pardon.

G. Michael Cooper, III, Robert H. Aronson, Chicago, Ill., for defendants-appellants.

Samuel K. Skinner, U. S. Atty., Ann C. Williams, Asst. U. S. Atty., Chicago, Ill., for plaintiff-appellee.

Before FAIRCHILD, Chief Judge, CUMMINGS, Circuit Judge, and CHRISTENSEN, Senior District Judge.*

FAIRCHILD, Chief Judge.

Defendants Joseph Kidding and Earl Brown appeal their convictions under 18 U.S.C. §§ 2313 and 2315. 18 U.S.C. § 2313 provides:

Whoever receives, conceals, stores, barters, sells or disposes of any motor vehicle or aircraft, moving as, or which is a part of, or which constitutes interstate or foreign commerce, knowing the same to have been stolen, shall be fined not more than $5,000 or imprisoned not more than five years, or both.

18 U.S.C. § 2315 provides in pertinent part:

Whoever receives, conceals, stores, barters, sells, or disposes of any goods, wares, or merchandise, securities, or money of the value of $5,000 or more, or pledges or accepts as security for a loan any goods, wares, or merchandise, or securities, of the value of $500 or more, moving as, or which are a part of, or which constitute interstate or foreign commerce, knowing the same to have been stolen, unlawfully converted or taken . . . Shall be fined not more than $10,000 or imprisoned not more than ten years, or both.

We affirm the convictions.

I. *The Nature of Defendants' Offense*

Defendants Earl Brown, a/k/a Earl Trent, and his half-brother Joseph Kidding, were charged in a two-count indictment with having received, concealed and stored (1) a stolen tractor moving in interstate commerce, and (2) a stolen trailer, worth more than $5,000, moving in interstate commerce.

The 1974 Peterbilt tractor and 1973 Timpte trailer in question belonged to Allen J. Herink of Pewaukee, Wisconsin. On November 1, 1974, Mr. Herink left the tractor-trailer with the Peterbilt-Timpte Truck Service Company in Waukesha, Wisconsin for servicing. Sometime late on November 11, 1974, or early on November 12th, the Service Company was broken into and the tractor-trailer stolen. Phone company records show that at 11:08 p. m. on November 11, 1974 a telephone call was made from the Chicago home of Joseph Kidding to the Peterbilt-Timpte Service Company.

On November 13, 1974, Earl Brown brought the stolen tractor-trailer to the Artco Trailer Repair Shop in Chicago. Mrs. Genola Veal, the wife of the shop's owner, later made an in-court identification of Earl Brown as the man who had brought the tractor-trailer into the shop to have it repainted. Mrs. Veal wrote out a work order which provided for brown stripes to be painted on the white trailer. Brown returned to the Artco shop that same day, accompanied by a man who claimed to be the owner of the tractor-trailer. They discussed the work to be done on the vehicle with Arthur Veal, Sr., the shop's owner, and Arthur Veal, Jr. At trial, Arthur Veal, Jr. would identify the purported "owner" of the tractor-trailer as Joseph Kidding. Though at trial Mrs. Veal could not positively identify Joseph Kidding as the individual who accompanied Earl Brown to the shop on his second trip, she did recall that the individual's name was "Joe" and that he was missing front teeth. The record indicates that defendant, Joseph Kidding, was missing front teeth. Arthur Veal, Sr. did not testify at trial because he was in jail for receiving and altering stolen tractors and trailers for resale in a different case.

Brown and Kidding and Brown's wife, Barbara, returned to the Artco shop several times in the next few weeks. It was decided during this time that the whole trailer should be painted brown with white stripes instead of merely adding brown stripes as originally ordered.

On November 27, 1974, federal and state authorities recovered the tractor-trailer from the Artco shop. The fingerprints of

---

* Senior District Judge A. Sherman Christensen of the United States District Court for the District of Utah is sitting by designation.

Earl and Barbara Brown were found on a temporary Indiana license located in the tractor. FBI agents took pictures of the tractor-trailer, which had by this time been repainted. At this time agents also showed photographs of the defendants to Mrs. Veal and Arthur Veal, Jr. They both identified Earl Brown as the man who had brought the tractor-trailer into their shop and ordered it repainted. Though Arthur Veal, Jr. simultaneously identified a photograph of Joseph Kidding as that of the man who claimed to own the tractor-trailer, it was not until June 23, 1976 that Mrs. Veal identified the picture of Kidding as that of the man who accompanied Earl Brown to the Artco shop.

On November 25, 1975, Joseph Kidding was indicted. Trial counsel was appointed on December 22, 1975. Shortly thereafter counsel, pursuant to Rule 2.04 of the Local Rules of Criminal Procedure and Rule 16(a)(1)(C) of the Fed.R.Crim.P., requested discovery material from the government.

Some months later, Earl Brown was also indicted. Trial counsel was appointed on May 24, 1976. On May 26, 1976, counsel was allowed to withdraw and leave was granted for the attorney representing Joseph Kidding also to represent Earl Brown. Counsel again requested discovery of the government.

At a bench trial, defendants were found guilty of both counts of the indictment. They were sentenced to serve three years incarceration on Count I and a consecutive three year term on Count II. The sentence on Count II was suspended and a five-year period of probation imposed to begin at the expiration of the sentence imposed in Count I.

II. *Joint Claim That There Was Only One Offense*

Defendants both challenge their convictions under 18 U.S.C. § 2315 on the grounds that such convictions are in fact duplicative of their convictions under 18 U.S.C. § 2313. The government has charged defendants with two violations because it has treated the tractor stolen as a "vehicle," the receipt or concealment of which is prohibited by section 2313, and the trailer stolen as a "good," the receipt or concealment of which is prohibited by section 2315. Defendants argue that since the tractor and trailer were hooked together as part of a single unit before the theft, the "vehicle" for purposes of the 2313 count should be the tractor-trailer unit. We cannot agree with the defendants.

The government cites us to the Sixth Circuit's decision in *United States v. McCoy,* 472 F.2d 704 (6th Cir. 1973), as supporting a two-count indictment in the concealment of a tractor-trailer. Admittedly, that case is somewhat different from the one before us. In *McCoy,* the trailer at issue was the subject of a separate theft from the tractor. *See also United States v. Pichany,* 490 F.2d 1073 (7th Cir. 1973). In the instant case, there was but one theft, that of a tractor-trailer unit. We note, however, that in the hands of the defendants the tractor-trailer did not remain a unit. Defendant Brown admits in his brief that on his first visit to the Artco Repair Shop, it was only the trailer that he left behind for painting. He drove away in the tractor. Only on the second visit to the Artco Shop did defendants leave the tractor.

Clearly a trailer, if it stands alone, is not a motor vehicle. Thus, it can constitute a "good" for the purposes of section 2315. *See United States v. Pichany, supra; cf. United States v. Kelly,* 435 F.2d 1288 (9th Cir. 1970), *cert. denied,* 401 U.S. 921, 91 S.Ct. 909, 27 L.Ed.2d 824 (1971). We set forth the above-outlined facts because we think they show that defendants in this case did on at least one occasion think of and treat the trailer as an item standing alone from the tractor.

In any case, the trailer was not indispensable to making the tractor a "vehicle." If that were the case, and if the two items had been stolen and then concealed as a single vehicle, we might be more sympathetic to an argument charging duplication. Moreover, we think it likely that dealing

illicitly with a tractor and trailer, even if the two items are already hooked together when stolen and when moving in interstate commerce, involves a larger misdeed than dealing with a single tractor. Accordingly, we do not think a defendant should be immune from any penalty attached to concealing a stolen trailer simply because he is being punished for concealing the stolen tractor to which the trailer was attached.

### III. The Appeal of Joseph Kidding on Count I

Joseph Kidding raises five independent grounds for the reversal of his convictions.

### A. Failure to Prove Interstate Commerce

Defendant Kidding seeks reversal on the ground that the government failed to prove that the tractor-trailer in question was "moving as, or [was] a part of, or . . . constitute[d] interstate or foreign commerce . . . " as required by 18 U.S.C. §§ 2313 and 2315. He claims—though without citing supporting authorities—that these statutes are not concerned with the interstate transport of stolen property. Rather their focus is on the theft of carriers engaged in interstate commerce. Accordingly, defendant Kidding claims the government was obliged to show either (1) that the tractor-trailer was a carrier which moved in interstate commerce, or (2) that the theft occurred in connection with the movement of the tractor-trailer in interstate commerce. Defendant Kidding concludes that since the tractor-trailer had always operated in Wisconsin prior to the theft, and since the theft took place, not while the vehicle was moving across state lines, but while it was at a Wisconsin service station for repairs, the government failed to meet its obligation as to proof of interstate commerce activity.

We cannot agree. The statutes in question have long been recognized to apply in those cases where vehicles are moved in interstate commerce as part of a scheme by which their theft in one state is sought to be concealed by their receipt and disposition in another. Indeed, a recent decision by this court suggests that in cases where the defendant is the receiver of a vehicle stolen in another state, it is more important to the establishment of the crime's interstate commerce requirement to consider whether the receipt was part of a total scheme to transport a stolen vehicle across state lines than to inquire into the interstate movement of the vehicle prior to its theft. See United States v. Pichany, 490 F.2d 1073, 1077–78 (7th Cir. 1973). See also United States v. Brady, 425 F.2d 309 (8th Cir. 1970); Powell v. United States, 410 F.2d 710 (5th Cir. 1969).

As to whether the government did meet its burden to establish such a scheme in this case, we would first note that the question is one of fact, and that we must affirm if substantial evidence exists in the record to support the trial court's findings. E. g. United States v. Pichany, supra at 1077. We further note that it is not incumbent upon the government to prove that defendant Kidding knew the vehicle was moved in interstate commerce or that he was in any way involved in the transaction prior to the vehicle crossing state lines. It is enough that his receipt was "one step in the total scheme of interstate transportation." United States v. Pichany, supra. Moreover, a presumption that such an interstate transport scheme exists can be established simply from proof of theft in one state and possession in another where " 'the date and circumstances be such as to justify the inference,' and no credible explanation of possession is offered by the defendant." United States v. Pichany, supra at 1078, citing Wolf v. United States, 36 F.2d 450, 452 (7th Cir. 1929).

In the instant case, there is no doubt but that the tractor-trailer was stolen in Wisconsin and ultimately received in Illinois. Defendants Kidding and Brown were first seen with the vehicle in Illinois just two days after its theft in Wisconsin. Defendants' possession of the vehicle so shortly after its theft, when considered together with the trial judge's factual finding that the defendant Brown's story as to how he

came into possession of the tractor-trailer was nothing less than "incredible," seems to warrant the inference of a scheme for the interstate transport of stolen vehicles in this case. Indeed, we find this presumption strengthened by telephone company records admitted into evidence which show that at 11:08 p. m. on November 11, 1974, the date of the theft, a phone call was made from defendant Kidding's residence to the Peterbilt-Timpte Company from which the tractor-trailer in question was stolen. We, therefore, find that the interstate commerce element of the government's case against defendant Kidding was satisfactorily established.

B. *Kidding's Claim that Joint Representation Denied Him the Effective Assistance of Counsel*

Defendant Kidding further seeks reversal on the ground that joint representation of him and co-defendant Brown by the same attorney denied him the effective assistance of counsel. In fact, the problem of joint representation in this case was first raised not by the defendant, but by the government which objected on the ground the defendants would present conflicting defenses. Defense trial counsel, Robert H. Aronson, who was appointed first to represent defendant Kidding, and then to represent defendant Brown, took exception to the government's objection. He noted for the court that from conversations with his clients, he did not think the defenses would be conflicting, that if he did think there was a conflict, he "would immediately advise Mr. Brown to get another attorney. . . ." Mr. Aronson further noted that he had advised both Kidding and Brown of this court's decision in *United States v. Mandell*, 525 F.2d 671 (7th Cir. 1975), *cert. denied*, 423 U.S. 1049, 96 S.Ct. 774, 46 L.Ed.2d 637 (1976).

*United States v. Mandell, supra,* as far as this circuit is concerned, places the primary responsibility for avoidance of conflict on the attorney.

[C]ommon representation, without a showing of conflicting interests, is not in

itself a violation of the Sixth Amendment, and . . . there may be excellent reasons for preferring the use of a single attorney in a particular case. We think the Sixth Amendment rights of defendants are adequately safeguarded by imposing the duty of informing defendants of the potential dangers of multiple-client representation initially on the attorneys, as officers of the court, and by admonishing the trial judges to be watchful for indicia of conflict during the trial. *Id.* at 677. *Accord: United States v. Gaines,* 529 F.2d 1038, 1043 (7th Cir. 1976); *Contra Lollar v. United States,* 126 U.S. App.D.C. 200, 376 F.2d 243, 245–46 (1967).

■ Though the court did not inquire of defendants whether they appreciated the potential dangers inherent in Mr. Aronson's joint representation of them, it seems reasonable to infer from the remarks noted above that Mr. Aronson did inform his clients of the dangers, but the clients did not consider them serious enough to outweigh whatever advantage they saw in joint representation. The difference between the themes of the two defendants were clearly brought out in the colloquy as well as the fact that Brown had allegedly made a statement to the FBI, implicating Kidding. It is difficult to assume that defendants were not informed nor deliberate in choosing to proceed with one counsel.

Thus, for Mr. Kidding to succeed on this appeal in his challenge to joint representation, it becomes incumbent on him "to demonstrate, with a reasonable degree of specificity, that a conflict of interests actually existed at trial." *United States v. Mandell, supra* at 677 (1975). *See also United States v. Gaines, supra.* The crux of defendant Kidding's argument is that his defense did ultimately conflict with that of Earl Brown. Brown admitted possession of the tractor-trailer in question but defended on the grounds that he did not know the vehicle was stolen. Kidding, however, defended on the grounds he never engaged in any activity related to the vehicle. Kidding now claims that his defense was sacrificed to that of Brown. He claims that very little

cross-examination of government witnesses was done on his direct behalf. And he notes that no cross-examination of Earl Brown was conducted by defense counsel after cross-examination by the government. Government counsel, on cross-examination, had confronted Brown with earlier statements made to the FBI that Kidding had accompanied him when he brought the tractor-trailer to the Artco Repair Shop.[1]

While we do find a difference in the defenses put forward by defendant Brown and defendant Kidding in this case, we do not believe that the failure to provide Kidding with separate counsel violated his Sixth Amendment right. We reach this decision because we have considered the record in the case and find that defense counsel's cross-examination of prosecution witnesses was not clearly inadequate as to Joseph Kidding. Indeed most of the cross-examination was geared toward benefitting *both* defendants, *i. e.* by impeaching the memory and credibility of witnesses. Moreover, we find that while it would not have been unreasonable to expect that had Kidding had separate counsel, such counsel would have cross-examined defendant Brown and sought to impeach him in general if not specifically as to his FBI statement that Kidding accompanied him to the Artco Repair Shop, this, by itself, is not sufficient to reverse defendant's conviction in light of the fact that other witnesses, namely, Genola Veal and Arthur Veal, Jr., had testified that Kidding was with Brown at their shop, and that the trial judge before whom this case was tried, in his memorandum decision, seems to have relied on these identifications rather than the Brown testimony in finding Kidding guilty.

Thus we find this case quite different from *United States v. Gaines, supra.* There we found prejudice when defense counsel kept one defendant from testifying on his own behalf for fear that on cross-examina-

tion, he would implicate co-defendants to whom counsel had an obligation from earlier representation. Clearly the interests of the defendant who presumably wished to testify were sacrificed to those whom he might implicate because of the attorney's obligation to or interest in the latter. Here, we cannot say that joint representation of the defendants resulted in Mr. Kidding's defense being sacrificed to Mr. Brown's simply because defendant Brown was allowed to testify. Had Kidding had separate counsel he could not have prevented this, nor the government cross-examination which brought out prior statements from Brown adverse to Kidding. Thus, the only possible prejudice would be from inadequate cross-examination of Brown, and as we have already stated, we do not find evidence of prejudice in this regard.

### C. Waiver of Jury Trial Not Made Knowingly and Intentionally

Defendant Kidding cites as further error the absence of any signed document in the record indicating that he knowingly and intentionally waived his right to a jury trial. On February 18, 1977, however, this court granted the government's motion to supplement the record, such that we now have before us a statement signed both by defendant Kidding and his trial counsel to the effect that defendant was advised in open court of his right to trial by jury but that defendant chose to waive that right and proceed to trial by the court without a jury.

This court has previously stated that when a defendant waives his right to a jury trial, it is helpful to any determination on appeal of the voluntariness of the waiver also to have the record reflect that the defendant was interrogated by the trial judge on the issue of voluntariness prior to the acceptance of his waiver. *See Estrada*

---

1. An FBI agent had earlier testified that Brown had given a statement that Joseph Kidding had gone to Wisconsin to get the tractor-trailer and that Kidding had accompanied Brown to the Artco shop to discuss the repainting of the trailer. The court admitted the FBI agent's testimony only as against Earl Brown. On cross-examination by the government, Brown denied ever having made a statement about Kidding going to Wisconsin. He further testified that any statement that Kidding accompanied him to the Artco shop was wrong.

v. United States, 457 F.2d 255, 257 (7th Cir. 1972). But we do not believe that such procedure, however desirable, is compelled by Rule 23(a) Fed.R.Crim.P. or by the Sixth Amendment, id. and thus, we do not find the failure of the trial judge in this case to conduct such an interrogation of defendant to warrant reversal of his conviction. Accordingly, on the basis of the written waiver, signed by defendant Kidding and his counsel, and in light of the fact that nothing in the record tends to impeach the recitations made in the waiver, we are satisfied that there was a voluntary and intelligent waiver of jury trial.

### D. Admission of Kidding Photograph into Evidence

We find no merit to Kidding's challenge that a photograph of him was admitted into evidence without proper authentication. It seems that no one ever testified that the exhibit was a photograph of Joseph Kidding. The government, in its brief, however, cites to portions of the trial transcript in which prosecution witness Arthur Veal, Jr. first made an in-court identification of Joseph Kidding as the man who came to his shop purporting to be the "owner" of the tractor-trailer in question and subsequently corroborated his own testimony by identifying the photograph of Kidding, the admission of which is here challenged as that which he had earlier identified as that of the "owner" of the tractor-trailer. We think that at that point the court could consider the photograph and make its own observation whether or not it resembled Kidding.

### E. Sufficiency of the Evidence

Finally defendant Kidding challenges his conviction on the ground that there was insufficient evidence to support a finding of guilty. The trial court acknowledged that the evidence as to Joseph Kidding was less conclusive than the evidence as to Earl Brown. Nevertheless, the court, relying (1) on the positive identification by Arthur Veal, Jr. of Kidding as the man who claimed to be the owner of the tractor-trailer in question when that vehicle was brought to his shop, (2) on the testimony of Genola Veal that someone named "Joe" was at the shop when the tractor-trailer was brought in for repairs, that "Joe" was missing some front teeth, and that defendant Kidding's first name was "Joseph" and he was missing front teeth, and (3) on the fact that telephone company records indicated that a phone call was made on the evening of the theft from a phone registered in defendant Kidding's name to the Peterbilt-Timpte Service Company from which the tractor-trailer was stolen, found defendant Kidding guilty.

The law in this Circuit has long been that in criminal cases not tried before a jury, a verdict of guilty must be sustained on appeal if supported by "substantial evidence." United States v. Owen, 231 F.2d 831 (7th Cir. 1956), cert. denied, 352 U.S. 843, 77 S.Ct. 42, 1 L.Ed.2d 59 (1956). We have no doubt but that the testimony of Arthur and Genola Veal and the phone company records constituted substantial evidence of the guilt of defendant Kidding, and accordingly, we affirm his conviction.

### IV. The Appeal of Earl Brown

Earl Brown raises two independent grounds for the reversal of his convictions.

### A. The Failure of the Government to Make Certain Evidence Available to Defendant Brown Prior to Trial

At trial, the government introduced evidence constituting: (1) a work order directing that brown stripes be painted at the top and bottom of the white trailer in question, (2) photographs of the tractor-trailer after it had been painted showing white stripes on a brown trailer, and (3) photographs of defendants Brown and Kidding which had been shown earlier to witnesses Arthur Veal, Jr. and Genola Veal in an effort to obtain an identification.

Defendant Brown complains that for the government to have failed to have tendered this evidence to him when he made his discovery request violated the due process clause of the Fifth Amendment, see Brady

*v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), Rule 16(a)(1)(C), Fed.R. Crim.P. and Rule 2.04, Local Rules of Criminal Procedure for the Northern District of Illinois. The basis of his claim is twofold: that the government was obligated to provide defense counsel with the evidence mentioned because (1) it was "material to the preparation of his defense," and (2) it might have induced defendant to plead guilty, thereby making any trial unnecessary.

■ As we see it, the critical common factor in the evidence defendant Brown complains of not receiving, is the fact that it is inculpatory rather than exculpatory. Defendant has not cited to us, nor have we found, any case which recognizes a defendant's due process right to inculpatory evidence in the possession of the government. The leading Supreme Court decision, *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), which defendant relies on, addresses itself exclusively to government suppression of exculpatory evidence.

> [T]he suppression by the prosecution of evidence *favorable* to an accused upon request violates due process where the evidence is material either to guilt or to punishment . . . .

*Id.* at 88, 83 S.Ct. at 1197. [Emphasis added.] Defendant endeavors to bring the evidence in question under the scope of *Brady* by arguing that the work order and photographs were "material . . . to punishment" in that, had defendant known of their existence, he might have pleaded guilty and thus received a lighter sentence. Nothing in *Brady* lends itself to such an interpretation. Nor are we persuaded that the economies to be achieved in terms of trial time if defendants are induced to plead guilty by being apprised of the evidence supporting the case against them warrants this court finding that defendants, as a matter of right under the Fifth Amendment, must be given all inculpatory evidence in the government's possession.

■ As to the purported violation of Local Rule 2.04, we note that the rule requires that defense counsel be allowed to inspect "any evidence favorable to the de-

fendant." Thus, we interpret Rule 2.04 to track *Brady, i. e.,* the government must give defendant any exculpatory evidence in its possession, and accordingly, we find no violation in the instant case.

■ Rule 16(a)(1)(C) speaks in somewhat broader terms of permitting defense counsel to inspect documents, photographs and other tangibles "which are material to the preparation of his defense, or are intended for use by the government as evidence in chief at trial, or were obtained from or belong to the defendant." We find that the work order and photographs which defendant complains of not receiving were used by the government in its case in chief, and thus, should have been made available to the defendant. We do not, however, find this sufficient grounds to warrant reversal. Defense counsel complained to the trial court of the government's noncompliance. That court, on being so apprised, did not feel that exclusion of the evidence or declaration of a mistrial was warranted. Rule 16(d)(2) Fed.R.Crim.P. makes plain that relief for violations of discovery rules is in the trial court:

> If . . . it is brought to the attention of the court that a party has failed to comply with this rule, the court may order such party to permit the discovery or inspection, grant a continuance, or prohibit the party from introducing evidence not disclosed, or it may enter such other order as it deems just under the circumstances.

To support a claim for reversal of the exercise of that discretion, the accused must show prejudice to substantial rights. *See United States v. Valdes,* 545 F.2d 957, 961 (5th Cir. 1977). As already discussed in our rejection of defendant's constitutional argument on this matter, we simply do not think a defendant can claim as a substantial right that the government must reveal to him all inculpatory evidence so that he may know exactly how strong the case is against him and thereby decide whether to plea bargain with the prosecutor.

B. *Interrogation by Trial Judge*

Defendant Brown urges reversal on the ground of misconduct by the trial judge. Both defendants took the stand and after the government concluded its cross-examination, the trial judge posed a series of questions. Defendant Brown contends that such conduct indicated that the trial judge had abandoned his impartiality and assumed the role of prosecutor in the case.

So long as he remains impartial, a trial judge may question witnesses. This court has so held in *United States v. DiVarco,* 484 F.2d 670 (7th Cir. 1973), and in *United States v. Esquer,* 459 F.2d 431 (7th Cir. 1972), both cases involving questioning by the judge in a jury trial. *See also United States v. McCord,* 166 U.S.App.D.C. 1, 509 F.2d 334 (1974), *cert. denied,* 421 U.S. 930, 95 S.Ct. 1656, 44 L.Ed.2d 87 (1975). However much care a judge must take in a jury trial to assure that his questioning not give so much as the appearance of partiality to the jurors, thereby prejudicing the defendant, we think that in a non-jury case, questioning by the trial judge will rarely be prejudicial. *Cf. Jackson v. United States,* 117 U.S.App.D.C. 325, 329 F.2d 893 (1964). Indeed, defendant cites us to only one case in which a conviction was reversed in a non-jury case because of the interrogation by the trial judge: *United States v. Cassiagnol,* 420 F.2d 868, 878 (4th Cir. 1970), *cert. denied,* 397 U.S. 1044, 90 S.Ct. 1364, 25 L.Ed.2d 654 (1970). In that case, the trial judge's interrogation of one defendant covered thirteen consecutive pages of trial transcript. Defendant Brown seizes on this fact and argues to this court that since the questioning in this case was also of considerable length, defendant Brown being asked thirty-seven questions, covering eight pages of transcript and defendant Kidding being asked nineteen questions, covering four pages of transcript—the answers to which Brown contends were damaging to him—this court should find sufficient prejudice to reverse. We have read the decision in *Cassiagnol* and are without doubt that it was not the extent of questioning by the trial judge that was the basis for reversal.

Rather, the Fourth Circuit, considering the content and tenor of the court's questioning, found evidence that the judge had already decided the case adversely to the defendant. Thus, it held that:

> Even though interrogation by a trial court is not always prejudicial in a case tried by the court . . . a conviction should be reversed when the appellate court is satisfied from the record that the trial judge prejudged the case before hearing all the evidence.

*Id.* at 878. We have read the trial judge's questioning of the two defendants in this case and find nothing that indicates prejudgment by the court.

V. *Conclusion*

We, therefore, affirm the convictions of the defendants under both 18 U.S.C. § 2313 and 18 U.S.C. § 2315.

Affirmed.