Alexander ENGLISH,
Petitioner-Appellant,

v.

UNITED STATES of America,
Respondent-Appellee.

No. 79–1817.

United States Court of Appeals,
Seventh Circuit.

Argued Feb. 29, 1980.

Decided March 13, 1980.

As Amended March 14, 1980.

Thomas F. Geraghty, Lucy Moss, Senior Law Student, Northwestern University Legal Clinic, Chicago, Ill., for petitioner-appellant.

John S. Leonardo, Asst. U.S. Atty., South Bend, Ind., for respondent-appellee.

Before FAIRCHILD, Chief Judge, and SWYGERT and SPRECHER, Circuit Judges.

PER CURIAM.

In this appeal from denial of his motion to vacate sentence, 28 U.S.C. § 2255, Alex-

ander English raises two issues. He argues that he was denied effective assistance of counsel when the attorney who had initially represented him represented his co-defendant at trial. He also argues that the *Bruton* rule was violated by the introduction of his co-defendant's confession, from which all reference to English had been excised, because in context the statement still implicated him.

English, along with Sam Hubbard, Jr. and Rufus Gaines, was convicted of bank robbery and murder. *See United States v. English*, 501 F.2d 1254 (7th Cir. 1974), *cert. denied sub nom. Hubbard v. United States*, 419 U.S. 1114, 95 S.Ct. 791, 42 L.Ed.2d 811 (1975). In the course of this prosecution Eisenberg, the attorney representing English and Hubbard, took over the representation of Gaines, leaving his co-counsel Anderson to represent English and Hubbard. We subsequently reversed Gaines' conviction, finding that his attorney's residual "duty to refrain from taking any action adverse to" the interests of English and Hubbard created a conflict of interests which denied him effective assistance of counsel. *United States v. Gaines*, 529 F.2d 1038, 1042 (7th Cir. 1976). Gaines had given a statement implicating English and Hubbard. The possibility that the interests of Hubbard and English in suppressing the references to themselves influenced the decision of Gaines' attorney to not call him as a witness was enough we said, to establish prejudice.

 English now argues that Eisenberg could not fulfill his residual duty to him because of his conflicting duty to Gaines, and that this denied him effective assistance of counsel. Reversing the reasoning in *Gaines*, English claims that he was actually prejudiced by his former attorney's decision to keep Gaines off the stand.[1] That decision would not, however, demonstrate a denial of effective assistance of counsel.[2] English after all is not impugning the effectiveness of his own counsel Anderson, but his former counsel, Eisenberg. As we have said, Eisenberg had a duty to "refrain from taking any action adverse to [English's] interests in a matter in which he had represented [him]." 529 F.2d at 1042. More precisely, Eisenberg was obligated to not take advantage of his former representation of English, to the benefit of his current client Gaines and the detriment of his former client English.[3] The decision, allegedly made on behalf of

---

1. When the three defendants were first tried Gaines testified and repudiated his confession. The trial resulted in a hung jury. At the second trial Gaines did not testify, and the jury convicted all three.

 In a similar case of successive representation, the Second Circuit has rejected the far more substantial claim that a defendant "did not testify in his own behalf because of the prospect of cross-examination by former counsel then representing adverse interests [of co-defendants]." *United States v. Press*, 336 F.2d 1003, 1017 (2nd Cir. 1964), *cert. denied sub nom. Fry v. United States*, 379 U.S. 973, 85 S.Ct. 670, 13 L.Ed.2d 563, *reh. den.* 380 U.S. 927, 85 S.Ct. 887, 13 L.Ed.2d 815 (1965). The Second Circuit noted that the defendant did not complain of the representation he did have, had not objected to his former attorney's withdrawal, and that the defenses were complementary. *Press* is substantial authority for our decision here.

2. There is no reason to suspect, and none has been suggested, that the decision was based on a preference for Gaines at the expense of English.

3. *Compare* Rule 1.10(a), of the recent "Discussion Draft of ABA Model Rules of Professional Conduct":

 A LAWYER WHO HAS REPRESENTED A CLIENT IN A MATTER SHALL NOT THEREAFTER:
 (1) REPRESENT ANOTHER PERSON IN THE SAME OR A SUBSTANTIALLY RELATED MATTER IF THE INTEREST OF THAT PERSON IS ADVERSE IN ANY MATERIAL RESPECT TO THE INTEREST OF THE FORMER CLIENT; OR
 (2) MAKE USE OF INFORMATION ACQUIRED IN SERVICE TO THE CLIENT IN A MANNER DISADVANTAGEOUS TO THE CLIENT, WHETHER OR NOT THE INFORMATION IS CONFIDENTIAL . . . , UNLESS THE INFORMATION HAS BECOME GENERALLY KNOWN OR ACCESSIBLE.
 Reprinted in 48 U.S.L.W. No. 32 (February 19, 1980). Although under this standard Eisenberg's representation of Gaines might be objectionable, that does not establish a constitutional violation.

Gaines and to the detriment of English, is not alleged to have been based on any considerations other than those which would have influenced wholly independent counsel. Eisenberg was under no duty to act contrary to the interests of his current client. In acting for Gaines he may not have done all he could have for English, but this does not mean that he did less for English than he should have.[4]

English argues that he was not independently represented at all. In *Gaines*, 529 F.2d at 1042–43, we noted that Gaines' attorney acted after trial as if he had represented all three defendants, and that Hubbard and English believed they had been represented by both attorneys. However, neither our discussion there, nor the record below, suggests that Anderson acted on behalf of anyone other than his clients Hubbard and English. Gaines' attorney may have had divided loyalties, but nothing suggests that Anderson did too.

English's second claim is that the introduction at trial of Gaines' confession violated the rule of *Bruton v. United States*, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968), and requires reversal. F.B.I. Agent Whitaker, testifying as to the confession of Gaines, suppressed all specific references to the other participants in the crime, and referred to them only as "two other individuals." He reported Gaines as having said that after the crime they all stopped at the Holiday Inn in Gary, Indiana, and "one of them registered there." This testimony regarding the registration at the Holiday Inn was introduced over the objection of counsel for English. Whitaker was followed on the stand by the manager of the Holiday Inn, who testified regarding a registration form filled out about an hour after the crime, and bearing the name of Alex English. English argues that given the evidence of the registration form, the reference in the confession to the Holiday Inn was directly and inevitably inculpating, and therefore violated his Sixth Amendment confrontation rights.[5]

 The introduction of a confession from which the names of co-defendants have been excised may violate the *Bruton* rule if in context the statement is clearly inculpating of a co-defendant, and vitally important to the Government's case. *United States v. Knuckles*, 581 F.2d 305, 313 (2d Cir.), *cert. denied*, 439 U.S. 986, 99 S.Ct. 581, 58 L.Ed.2d 659 (1978). The clearest example of such a case is *United States v. Gonzalez*, 555 F.2d 308 (2d Cir. 1977). There was testimony that Costano said that keys

---

4. English argues, in reliance on *United States ex rel. Sullivan v. Cuyler*, 593 F.2d 512 (3d Cir.), *cert. granted*, 444 U.S. 823, 100 S.Ct. 44, 62 L.Ed.2d 30 (1979), that the mere possibility of prejudice is enough to mandate reversal. However, this court rejected the Third Circuit's standard in *United States v. Mandell*, 525 F.2d 671, 675 n.11 (7th Cir. 1975), *cert. denied*, 423 U.S. 1049, 96 S.Ct. 774, 46 L.Ed.2d 637 (1976), and requires proof of actual conflict or prejudice, *United States v. Mavrick*, 601 F.2d 921, 930 n.10 (7th Cir. 1979). There has been no showing of actual conflict or prejudice resulting from the dual representation of Gaines and English.

 *Holloway v. Arkansas*, 435 U.S. 475, 98 S.Ct. 1173, 55 L.Ed.2d 426 (1978), holds that proof of actual prejudice is not required when the defendant and his counsel "tried to avoid [the conflict of interests] by timely objections to the joint representation." 435 U.S. at 490, 98 S.Ct. at 1182. No such objections were made in this case. *Holloway* does not require that we presume prejudice here. *See United States v. Mavrick, supra*, n.10.

5. The Government asserts that this issue has already been considered on direct appeal, and is not subject to relitigation. On direct appeal this court did in fact consider the general *Bruton* issue raised by Agent Whitaker's testimony, *United States v. English*, 501 F.2d 1254, 1263 (7th Cir. 1974). However, the reference to the Holiday Inn was not raised then either in the appellant's brief, or in this court's opinion. There is authority for the proposition that a successive § 2255 motion alleging new facts may be denied where those facts were known or should have been known at the time of the first petition. *United States v. Romano*, 516 F.2d 768, 771 (2d Cir.), *cert. denied*, 423 U.S. 994, 96 S.Ct. 420, 46 L.Ed.2d 368 (1975). English argues, however, that the appeal was conducted by Eisenberg, whose conflict of interests may have interfered with his full and effective presentation of this issue. In the circumstances, "the ends of justice would [probably] be served by reaching the merits of [this] subsequent application." *Sanders v. United States*, 373 U.S. 1, 15, 83 S.Ct. 1068, 1077, 10 L.Ed.2d 148 (1963).

found in his pocket belonged to the person who gave him the cocaine. Other evidence indicated that those keys fit the mail box and apartment door of Gonzalez. The inference was inevitable and compelled that the keys belonged to Gonzalez, and that it was therefore he who gave the cocaine to Costano. The statement was thus directly and clearly inculpating. The court emphasized that the only other evidence against Gonzalez was circumstantial, and that despite contrary rulings by the trial court the prosecutor sought to link Gonzalez to the cocaine via his ownership of the keys.[6]

Where the context may permit an inculpating inference, but does not compel it, no *Bruton* violation exists. In *United States ex rel. Nelson v. Follette*, 430 F.2d 1055 (2d Cir. 1970), *cert. denied*, 401 U.S. 917, 91 S.Ct. 899, 27 L.Ed.2d 818 (1971), Biggins was reported to have confessed that he met his fellow participant in the robbery and murder at a certain bar. Other testimony indicated that Biggins and Nelson had been in that bar at the same time. Biggins' statement was not a *Bruton* violation, however, because "the jury would have had to make a substantial inference to implicate Nelson in the crime by virtue of his mere presence in the bar where Biggins said he

ran into 'Oliver.'" *Id.* at 1058.[7] English, similarly, is not necessarily implicated just because he was present in the motel where Gaines said he and his accomplices went after their crime. There was therefore no *Bruton* violation.[8]

For the foregoing reasons, the judgment of the district court dismissing this petition is affirmed.

---

6. Appellant cites *United States v. Danzey*, 594 F.2d 905, 917–919 (2d Cir.), *cert. denied*, 441 U.S. 951, 99 S.Ct. 2179, 60 L.Ed.2d 1056 (1979), but the issue there is not contextual implication by logical inference from other admissible evidence, such as is involved here. *Danzey* concerns the inferences which may be drawn when, although names have been excised from the redacted confession, it is explicitly stated that particular names were named. *Danzey* is not relevant here.

7. The court concluded in *Nelson* that "In short, Biggins' statements were not clearly inculpatory because they alone did not serve to connect Nelson with the crime." This language has been adopted as a test in *United States v. Wingate*, 520 F.2d 309, 314 (2d Cir. 1975), *cert. denied*, 423 U.S. 1074, 96 S.Ct. 858, 47 L.Ed.2d 84 (1976), and *United States v. Knuckles*, 581 F.2d 305, 313 (2d Cir. 1978). This test, however, insufficiently protects *Bruton* rights, which may be violated if as in *Gonzalez* the challenged statement in the context of other evidence directly and inevitably compels an inculpating inference. A *Gonzalez* type statement should satisfy the *Bruton* standard of a "powerfully incriminating extrajudicial state-

ment," 391 U.S. at 135, 88 S.Ct. at 1627, even though reference to other evidence is necessary.

8. *Compare United States v. Belle*, 593 F.2d 487 (3d Cir. 1979) (en banc), rejecting a contextual inculpation claim, where the challenged statement of a drug courier merely indicated that when arrested he was on his way to deliver drugs to a trash can near where other evidence placed Belle, and that he had previously met the person with whom Belle was arrested. The court said that "When a co-defendant's extrajudicial statement does not directly implicate the defendant . . . the *Bruton* rule does not come into play." 593 F.2d at 493. *See also United States v. Holleman*, 575 F.2d 139 (7th Cir. 1978); *United States v. Trudo*, 449 F.2d 649 (2d Cir. 1971), *cert. denied*, 405 U.S. 926, 92 S.Ct. 975, 30 L.Ed.2d 799 (1972); *United States v. Lipowitz*, 407 F.2d 597 (3d Cir.), *cert. denied,* 395 U.S. 946, 89 S.Ct. 2026, 23 L.Ed.2d 466 (1969). The state court cases cited by appellant do not persuade us to find significant contextual inculpation here.