STATE, Plaintiff, v. BEAUDRY, Defendant *

*No. State 78. Argued November 4, 1971.—Decided December 2, 1971.*

(Also reported in 191 N. W. 2d 842.)

* Motion for rehearing denied, without costs, on February 1, 1972.

For the plaintiff there was a brief and oral argument by *Robert H. Bichler* of Racine, counsel for the State Board of Bar Commissioners.

For the defendant there was a brief and oral argument by *Roland J. Steinle, Jr.,* and *Stanley F. Hack,* both of Milwaukee.

PER CURIAM. This case arises out of the facts set forth in the *Estate of Komarr* (1970), 46 Wis. 2d 230,

175 N. W. 2d 473, certiorari denied (1971), 401 U. S. 909, 91 Sup. Ct. 867, 27 L. Ed. 2d 806, and the complaint of the Board of State Bar Commissioners dated July 21, 1970, asks this court to impose professional discipline upon Robert J. Beaudry, an attorney, for bringing the legal profession into discredit and for asserting undue influence upon his client Mrs. Komarr, the testator, resulting in a will in which he was named practically the sole beneficiary. Robert J. Beaudry was born in 1920 and was admitted to the practice of law in this state in 1949. He had his office in West Allis and so far as the records in this court show, he has not previously had a disciplinary complaint filed against him. The matter was referred to the Honorable C. BERNARD DILLETT as referee to hear the testimony and to make recommendations. He found the manner in which Beaudry handled the drafting of Mrs. Komarr's will constituted unprofessional conduct and that it brought the legal profession into disrespect in the judgment of the public. The referee also found Beaudry did not exert undue influence in fact in becoming a beneficiary in the will and recommended that Mr. Beaudry be severely reprimanded and ordered to pay all the costs of the proceeding.

The will was drafted after our decision in *State v. Horan* (1963), 21 Wis. 2d 66, 123 N. W. 2d 488, but prior to our decision in *State v. Collentine* (1968), 39 Wis. 2d 325, 159 N. W. 2d 50. In *Horan,* we held the attorney had no right to jeopardize by the performance of his professional duties the confidence, approval, and esteem of the public which the legal profession needs and has traditionally enjoyed. This was said in reference to the problem in which a lawyer finds himself when asked to draw a will for a friend or a relative who wishes to make a bequest to him or to a member of his family. We adopted the view that when a testator wishes to make his attorney or a member of his immediate family a beneficiary in his will, ordinary prudence requires that the will

be drawn by some other lawyer of the testator's own choosing so that any suspicion of undue influence by the lawyer beneficiary is avoided.

We pointed out two exceptions, *i.e.*, a lawyer may draft a will for his wife, his children, or his parents or other close relative in which he is a beneficiary if he stands in the relationship to the testator of one being the natural object of the testator's bounty and the proposed legacy to himself or a member of his family is reasonable and natural under the circumstances or is no more than would be received by law, and no reasonable ground in fact exists for the attorney to anticipate a contest or for the public to have reasonable cause to lose confidence in the integrity of the bar. We also indicated a lawyer might draw a will under circumstances which would give rise to an inference of undue influence if he fully advised his client of the effect thereof and when he was justified in believing there would be independent evidence which would rebut an inference of undue influence.

Those exceptions were qualified in *State v. Collentine, supra,* for a prospective application as follows: ". . . a lawyer may be the scrivener of a will in which he is a beneficiary only when he stands in relationship to the testator as the natural object of the testator's bounty and where under the will he receives no more than would be received by law in the absence of a will." As the law stands now, a lawyer cannot draw a will for a client, whether a relative or not, in which he or a member of his family is a beneficiary if the bequest amounts to more than what such beneficiary would receive if the client died intestate. This rule avoids all suspicion on the part of the public, whether justified reasonable or not, and assures the public of the integrity of the bar in its professional relationships.

In this case Beaudry cannot qualify under the modification of the rule because he would have received nothing from Mrs. Komarr by law in the absence of her will.

Furthermore, the will disinherited her son George. Consequently, it is his conduct and the manner in which he had the will drafted which must now be examined.

Mrs. Komarr was born Evelyn Vargo on April 18, 1893, in what is now Yugoslavia. At the age of seventeen she came to Milwaukee and after a few months engaged in a questionable occupation which she pursued for many years. In 1914 while in a jail in Chicago she gave birth to a child, which was adopted by her sister and was given the name of George. Later in life, Evelyn Vargo married Bruno Komarr, who died early in the 1960's. Upon his death, she suffered a severe change of personality and in 1964 was committed to Milwaukee county's institution for mental diseases; after about six months she was released to her son George Vargo who took her to live with him in Michigan. While she was in the county institution, a guardianship was instituted and letters of guardianship were issued to George Vargo by the Milwaukee county court. On February 7, 1965, the guardianship was terminated and a conservatorship was established with George Vargo as the conservator at her request. Mrs. Komarr became dissatisfied with her son and returned to Milwaukee and entered Mount Carmel Nursing Home in August, 1965. After some disputes and further dissatisfactions with her son, she petitioned the court for a change of her conservator, asking for the appointment of Robert J. Beaudry whom she had come to know when he represented her in the probate of her husband's will and in two or three lawsuits in which she became involved. While living in the nursing home, she suffered a stroke on March 17, 1968, and was taken to the Misericordia Hospital in Milwaukee. She died on July 8, 1968, at the age of seventy-five. During her lifetime, Mrs. Komarr was completely illiterate, being unable even to write her own name. Her estate amounted to approximately $50,000 which she inherited from her husband.

Mr. Beaudry learned of the stroke about noon of the day after the stroke occurred. He proceeded to his office and then to the hospital. Mrs. Komarr had a 1963 will in which her son was a beneficiary. While visiting with her, he initiated a discussion of a will and when she indicated she wanted him to have the money, he told her another attorney would have to draft it. He asked her if she wanted him to get another attorney for her and she said yes. He immediately went to the courthouse and conferred with a county judge about the proposed bequest and with the deputy register in probate. He tried to contact Roland J. Steinle, Jr., who had acted as his attorney in a controversy over the dissolution of a legal partnership. Not being able to reach Mr. Steinle, he called Joseph P. Balistrieri, a young lawyer of limited experience who had also represented him in some minor matters. Mr. Beaudry took Mr. Balistrieri and his sister, who acted as Mr. Balistrieri's secretary, to the hospital after telling him to come prepared with a pad of paper and a pen to make a will.

On the way to the hospital, Mr. Beaudry informed Mr. Balistrieri Mrs. Komarr wanted to make Mr. Beaudry a beneficiary; that she could not write, that she had a son whom she wished to disinherit but he did not tell Mr. Balistrieri that he, Beaudry, was the conservator of Mrs. Komarr's estate. Mr. Beaudry introduced the Balistrieris to Mrs. Komarr and he returned to his office. After conferring with some clients, he returned to the hospital according to prearrangements with the Balistrieris who were waiting for him in the waiting room. Before entering the car, Mr. Balistrieri handed the will to Mr. Beaudry although he had not been instructed to do so by Mrs. Komarr. Mr. Beaudry immediately examined it and thereafter kept it in his possession until it was offered for probate.

The referee was of the opinion, and we think rightly so, that Mr. Balistrieri acted as a scrivener for Beaudry

and not as an independent attorney for Mrs. Komarr. It is the duty of an attorney, who selects another attorney to draw a will for his client in which he is to be a beneficiary, to pick out as competent and as independent an attorney as the client would pick out. Consequently, it was the duty of Mr. Beaudry to instruct Mr. Balistrieri he was to act as an independent attorney for Mrs. Komarr with no obligations to him and ascertain from her by specific inquiry what her intentions were, the natural objects of her bounty, the value of her property, and all other matters which would be pertinent to her testamentary capacity to make a will and her intentions for the disposition of her property. This is especially important in this case because Mrs. Komarr had just suffered a stroke and was seventy-five years of age.

Mr. Beaudry's professional obligations were not discharged by the way he secured the drafting of this will even if he were not a beneficiary. It was Mr. Beaudry's duty to provide an attorney, not a scrivener. In the *Estate of O'Loughlin* (1971), 50 Wis. 2d 143, 183 N. W. 2d 133, we said that one who drafts a will without adequately counseling the testator is a mere scrivener and not an independent legal adviser. Other courts have noted the requirement of independent legal advice may not be met if the scrivener is in fact a close associate of the attorney beneficiary. *See In re Will of Moses* (Miss. 1969), 227 So. 2d 829; Annot. (1968), *Wills: Undue Influence in Gift to Testator's Attorney,* 19 A. L. R. 3d 575, 598. In *Reilly v. McAuliffe* (1954), 331 Mass. 144, 117 N. E. 2d 811, it was said advice which is incompetent, perfunctory or given without adequate knowledge of the testator's situation is not sufficient. When the attorney selected by the proposed attorney beneficiary is a close friend, the rule requires that attorney to meet all the tests for an independent legal attorney selected solely and exclusively by the testator himself. *See In re Lobb's Will* (1944), 173 Or. 414, 145 Pac. 2d 808.

It may be Mr. Beaudry thought that under the language of *State v. Horan,* since he advised Mrs. Komarr he could not draw the will and she asked him to find a lawyer for her, that he was free to hire any lawyer and the fact the will was drawn by another lawyer would be independent, competent evidence which would rebut any inference of undue influence. However, this was a false hope rather than good judgment because Mr. Beaudry knew Mrs. Komarr had a son and even though there was some disagreement between them, the attorney-conservator relationship was of such a confidential nature that the son could reasonably be expected to contest the will, which he in fact successfully did. Nor was the relationship between Mr. Beaudry and Mrs. Komarr such to make reasonable people believe he was a natural object of Mrs. Komarr's bounty, at least not to the extent of practically all her estate. It is true Mrs. Komarr and Beaudry were on friendly terms but that is true of most client-attorney relationships. It is also true Mr. Beaudry had had Mrs. Komarr in his home for dinner, but that likewise is not unusual in client-attorney relationships.

We agree with the findings and conclusions of the referee that Mr. Beaudry was more interested in protecting his interest as a beneficiary of the proposed will than he was in obtaining for his client competent, independent legal advice. Acting as he did brought the profession in disrepute and caused a contest of the will and an appeal.

The referee has concluded on the facts he heard that Mr. Beaudry did not in fact practice undue influence on Mrs. Komarr. In *Estate of Komarr, supra,* we held an inference of undue influence existed and the proof was not sufficient to rebut it; consequently, we ordered that will not to be probated. The conclusion of the referee, whether accepted or rejected, should not and will not affect that will. While the evidence in this case is not

substantially different than that in *Estate of Komarr* and deals more in detail with the relationship between Mrs. Komarr and her son and with medical testimony concerning her mental capacity at the time she executed the will, we are reluctantly inclined for the purpose of this case only to accept the conclusion of the referee. If Mr. Beaudry were found to have exercised undue influence, an act which involves moral turpitude, he would be subject to suspension, if not disbarment. The referee recommends Mr. Beaudry be severely reprimanded. We agree and we consider the seriousness of this reprimand to be but a notch or a hairline from suspension.

We have been asked to lay down precise guidelines for attorneys to draft wills in which they are to be named beneficiaries. This request presupposes the present cases on the subject are not adequate; we think they are and the basic, general rule is, it should not be done. If the attorneys will read our prior cases on this subject [1] with an unbiased eye, they will find adequate guidelines. An attorney who sees how close he can come at the line of demarcation always runs the risk of overstepping.

We note in the record letters from some 35 judges commenting on the general good character of Mr. Beaudry. We are at loss to know how letters became evidence in a discipline proceeding. They are not subject to cross-examination and should not be in the record. We do not believe judges should become general character witnesses in disciplinary cases unless subpoenaed and certainly the solicitation by a lawyer of 35 judges for character letters is an imposition on the judges and smacks of stuffing the record to impress this court. While we do not hold the giving of a testimonial letter by a judge is unethical, we frown upon the practice and doubt its

---

[1] *State v. Horan* (1963), 21 Wis. 2d 66, 123 N. W. 2d 488; *State v. Eisenberg* (1965), 29 Wis. 2d 233, 138 N. W. 2d 235; *State v. Collentine* (1968), 39 Wis. 2d 325, 159 N. W. 2d 50; *State v. Haberla* (1968), 39 Wis. 2d 334, 159 N. W. 2d 11.

effectiveness and good taste. General reputation proved by several knowledgeable witnesses of the community subpoenaed for that purpose is one thing; a mass of unsworn, limited individual opinions is something else.

The referee has recommended Mr. Beaudry be assessed all costs in this matter. These now amount to $4,438.28 not including the fees and expenses of the attorney for the Board of State Bar Commissioners; we think the payment of $2,500 toward these costs is sufficient. Therefore, Mr. Robert J. Beaudry is severely reprimanded and censured for his unprofessional conduct in respect to the will of Mrs. Evelyn Komarr and is ordered to pay $2,500 costs within one year.