IN the MATTER OF DISCIPLINARY PROCEEDINGS AGAINST
Donald S. EISENBERG, Attorney at Law.

Supreme Court

*No. 82–1914–D. Submitted on briefs February 2, 1984.—
Decided February 28, 1984.*
(Also reported in 344 N.W.2d 169.)

For the petitioner and cross-respondent there were briefs by *John O. Olson* and *Braden & Olson,* Lake Geneva.

For the respondent and cross-appellant there were briefs by *Coffey, Coffey & Geraghty,* Milwaukee.

*PER CURIAM.   Attorney disciplinary proceeding; attorney's license suspended.*

The Board of Attorneys Professional Responsibility appeals and Attorney Donald S. Eisenberg cross-appeals from the referee's findings, conclusions and recommendation for discipline. The referee, the Hon. William C. Sachtjen, reserve judge, concluded that Eisenberg, an attorney admitted to practice in 1956 and who practices in Madison, failed to decline proffered employment under circumstances which would be likely to adversely affect his independent professional judgment on behalf of another client, contrary to SCR 20.28(1), and continued multiple employment when the exercise of his independent professional judgment on behalf of one client would or would be likely to adversely affect his representation of another client, in violation of SCR 20.28(2). The referee recommended that Eisenberg be publicly reprimanded for unprofessional conduct and ordered to pay the costs of the disciplinary proceeding.

The following evidentiary issues are raised in this appeal: whether evidence concerning prior discipline of Eisenberg was properly excluded, whether 67 letters from attorneys and others attesting to Eisenberg's character were properly received into evidence, and whether a

transcript of a non-judicial proceeding was properly admitted. In addition, Eisenberg alleges that his rights to due process and equal protection were violated by the Board's delay in bringing the disciplinary proceeding and by the manner in which its investigation was conducted. He also contends that the record does not establish by clear and satisfactory evidence that he violated SCR 20.-28. The Board, on the other hand, argues that the public reprimand recommended by the referee is not sufficient discipline for Eisenberg's misconduct.

The facts out of which this proceeding arose are these: In late August or early September, 1977, Eisenberg was retained to represent Samuel Cerro, who was charged with three felony drug counts in Dane county circuit court. In late December of that year, a man named Harold Berge was murdered in Dane county, and a friend of Cerro's, William Garrett, had information directly implicating one Barbara Hoffman as Berge's murderer, which information Garrett was willing to make available to the authorities in exchange for certain consideration for himself, Cerro and others. Charles Giesen, a partner of Eisenberg, conveyed Garrett's offer of the information implicating Hoffman to the district attorney, but the offer was refused because the district attorney considered Garrett's demand for prosecutorial forbearance disproportionate to the value of the information in light of the fact that he already had a witness, Gerald Davies, who would implicate Hoffman. On or about January 10, 1978 Eisenberg knew, through Giesen, that his client Cerro was able to provide information concerning Berge's murder and that the information could be helpful to the authorities. Between January 20 and February 16, 1978, Eisenberg undertook the defense of Barbara Hoffman, who was charged with Berge's murder. Gerald Davies was murdered on March 27, 1978.

On April 17, 1978, following plea negotiations between Eisenberg and the district attorney's office held just prior to trial, Cerro entered a plea of no contest to two of the three felony charges, and the third charge was dismissed. The district attorney recommended the maximum sentence of five years on each count, but no mention was made as to whether those sentences were recommended to be concurrent or consecutive. On April 26, 1978 Eisenberg received a letter from the Dane county district attorney stating that favorable consideration would be given to Cerro at sentencing on the felony convictions if Cerro, through Garrett, would make available to the district attorney the information he had regarding Hoffman's involvement in the deaths of Berge and Davies. Eisenberg did not respond to that letter. On May 5, 1978, Giesen made an initial appearance in Dane county circuit court on behalf of Cerro, who had been charged with 55 counts of commercial gambling. Cerro discharged Eisenberg as his attorney in July of 1978.

Eisenberg continued to represent Hoffman throughout the proceedings in which she was charged with the murders of Berge and Davies. After Cerro had discharged Eisenberg, Cerro's friend, Garrett, furnished information to the state which assisted in the prosecution of Hoffman, and it resulted in a favorable recommendation by the district attorney with respect to Cerro's sentencing on the drug convictions and on the gambling charges. On the felony drug convictions the district attorney recommended imposed and stayed time, with a period of probation, six months of which to be spent in the county jail; the district attorney consolidated the 55 commercial gambling charges into four counts, to which Cerro pleaded guilty, and recommended an imposed and stayed sentence with a period of probation, a portion of which to be served in the county jail concurrently with the sentence on the

drug convictions. The court followed those recommendations except that, on the commercial gambling charges, sentence was withheld, rather than imposed and stayed.

When Eisenberg learned in August of 1982 that the Board was investigating his conduct in the representation of Cerro and Hoffman, he offered to appear and provide information to the Board concerning the matter, but the Board did not accept the offer. The Board commenced the disciplinary proceeding on October 15, 1982.

In the course of the disciplinary proceeding, Eisenberg moved to dismiss the complaint on constitutional grounds, arguing that the Board's delay in bringing the action and its rejection of his offer to appear and provide information during the investigative phase were prejudicial to his defense against the charges. The referee properly denied that motion, on the grounds that there was "no due process required at and during the investigative stage of a grievance procedure" and that there was no prejudice to Eisenberg as a result of the delay in bringing the action.

We reject Eisenberg's contention that he was constitutionally entitled to notification of the Board's investigation, as well as an opportunity to appear before the Board and present information concerning it during the investigation and before a complaint was filed with the court. In *State v. Hersh,* 73 Wis. 2d 390 (1976), we held that an attorney's constitutional due process right involved "only his right to prior notice of charges, his right to prepare to defend these charges and his right to a full hearing on these charges." *Id.,* 398. In that case, the referee permitted the amendment of the disciplinary complaint while the proceeding was pending, granting the attorney an adjournment to prepare a defense against the additional allegations of the amended complaint.

In his brief, Eisenberg cites SCR 22.07 (2), which vests the Board with discretion as to informing an attorney of

a pending investigation. The rule provides: "During the course of an investigation, the administrator or a committee may notify the respondent of the subject being investigated. . . ." Eisenberg argues that the "fashion and manner" of the Board's investigation contravened his constitutional rights and that due process requires the existence of some standard according to which the Board is to exercise its discretion whether to notify an attorney of a pending investigation.

In support of his argument, Eisenberg cites *In the Matter of Childs*, 101 Wis. 2d 159 (1981), in which the court required due process procedures to be afforded by the Board of Attorneys Professional Competence prior to its making a recommendation to the court concerning an applicant seeking admission to the bar. *Childs* is not applicable here because in bar admission procedures there is no other opportunity for an applicant to have a hearing prior to the Board's making a recommendation on the application. In attorney disciplinary matters, however, a disciplinary hearing is required by rule, SCR 21.09(4), following the Board's filing of a complaint.

On the first of the evidentiary issues, the Board contends that the referee erred by refusing to admit into evidence a letter of private admonition sent to Eisenberg by the Board in 1978, as well as the opinion in *United States v. Gaines*, 529 F.2d 1038 (7th Cir., 1976), on which the admonition was based. *Gaines* concerned the potential conflict of interest in Eisenberg's representation of three co-defendants. At arraignment, the federal district court discussed the possible conflict and, on the defendant's request, permitted Eisenberg to continue to represent all three. Eisenberg subsequently withdrew from representing two defendants, but on appeal his continued representation of the third defendant was found to have created "a serious conflict of interest." *Id.*, 1042.

Eisenberg contends that the letter of admonition was properly excluded, but he cites no authority in support of that position. He notes, however, that the ethical provision involved there was SCR 20.23, which requires a lawyer to exercise independent professional judgment on behalf of a client "free of compromising influences and loyalties." The ethics rule here, however, is SCR 20.28, concerning the acceptance or continuation of employment if the interests of another client may impair the independent professional judgment of a lawyer.

The Board's contention is correct that evidence of prior attorney misconduct is material to the issue of appropriate discipline in a subsequent disciplinary proceeding against the attorney. *State v. Hildebrand*, 48 Wis. 2d 73 (1970). The letter of private admonition from the Board arising out of *Gaines*, as well as the opinion in that case, should have been admitted into evidence in the disciplinary proceeding, and we consider them in this appeal.

The Board also argues that the referee erred by receiving into evidence 67 letters of character reference for Eisenberg sent to the referee, at Eisenberg's request, by attorneys and others who did not testify at the disciplinary hearing and whose statements as to Eisenberg's character were not made under oath. In *State v. Beaudry*, 53 Wis. 2d 148 (1971), we considered the fact that the record in that disciplinary proceeding included letters from some 35 judges commenting on the general good character of the attorney charged with unprofessional conduct. We stated, "They are not subject to cross-examination and should not be in the record. . . . General reputation proved by several knowledgeable witnesses of the community subpoenaed for that purpose is one thing; a mass of unsworn, limited individual opinions is something else." *Id.*, 156–157. Here, the referee stated on the record

at the disciplinary hearing that the letters of character reference would not influence him at all in his factual determinations or in any recommendation he might make as to discipline. Regardless, the admission of those letters into evidence was improper.

The third evidentiary issue concerns the referee's admission of a portion of the transcript of a June 13, 1980 meeting at which Eisenberg's client, Barbara Hoffman, was questioned by an assistant district attorney and Eisenberg concerning her "waiver" of a potential conflict involving Eisenberg's having to cross-examine a witness, Garrett, who had been represented by his partner, Giesen. The transcript of that meeting contains the following exchange between Eisenberg and Hoffman:

"MR. EISENBERG: Do you understand that Donald S. Eisenberg may be called on the carpet before the Bar Association and that Donald S. Eisenberg would tell the Bar Association to shove it up their fanny; I'm being very blunt. Do you understand that? Have I explained that to you?

THE WITNESS: Yes.

MR. EISENBERG: And have I also explained to you that I don't practice law on the guidelines of what the Bar Association thinks I should or shouldn't do, and that I believe I'm going to give you the best representation in the entire world, and do you understand that?

THE WITNESS: I understand; yes."

Eisenberg maintains that his statements were merely "an attempt . . . to assure Ms. Hoffman that the relationship between she *(sic)* and her attorney remained intact and that efforts to undermine that representation would not be availing." He argues that the transcript should not have been admitted because it was not relevant to the disciplinary proceeding, in that the hearing occurred two years after the time of his allegedly conflicting represen-

tations of Cerro and Hoffman. The Board contends that Eisenberg's statements go "directly to Eisenberg's conscious and contemptuous attitude toward the rules a lawyer is to follow."

The hearing transcript is relevant to this disciplinary proceeding, for it shows Eisenberg's willingness to represent a client even though that representation might be in violation of the court's Code of Professional Responsibility and subject him to professional discipline for multiple representation of clients where there appear to be potential conflicts of interest. His statements are probative of the fact that he undertook and continued Hoffman's representation either knowing that Cerro's interest conflicted with hers or, knowing of Cerro's access to information concerning Hoffman, without investigating whether that information would create a conflict with his representation of Hoffman. Consequently, the evidence was properly admitted.

Eisenberg contends that the Board failed to meet its burden of establishing by clear and satisfactory evidence that he violated a rule of professional conduct, *State v. Wildermuth,* 76 Wis. 2d 476, 481 (1977). He argues that the testimony in the disciplinary proceeding established that he had known no facts which would have impaired his exercise of independent professional judgment on behalf of both Cerro and Hoffman. He claims that his associate, Giesen, told him in only general terms, and without specific facts, of Garrett's information implicating Hoffman in Berge's death. He admits, however, that he telephoned an assistant district attorney on April 19, 1978, after he had learned that Cerro and Garrett had contacted the police to explore a trade of Garrett's information for consideration of Cerro, Garrett and others, and after Cerro and Garrett had talked with Giesen concerning their desire to make a deal. In that contact with the

assistant district attorney, Eisenberg stated that "he was troubled by the situation and didn't know what he would do." When he subsequently received the district attorney's April 26, 1978 letter concerning a deal, he did not respond.

Eisenberg also takes the position that Giesen had told Cerro to get another attorney after Eisenberg was retained by Hoffman. However, Giesen testified that he told Cerro on more than one occasion to get other counsel if he were dissatisfied with the representation he was getting from Eisenberg. This is certainly not the equivalent of Eisenberg's withdrawing from the representation of Cerro, nor does it constitute "full disclosure of the possible effect of [multiple representation] on the exercise of the lawyer's independent and professional judgment on behalf of each," which, pursuant to SCR 20.28 (3), would permit a lawyer to represent multiple clients "if it is obvious that the lawyer can adequately represent the interest of each." Further, it is uncontroverted that Giesen made an initial appearance on Cerro's behalf on the gambling charges in May of 1978, and Cerro did not discharge Eisenberg as his attorney until July 18, 1978.

We are satisfied that the record establishes by clear and satisfactory evidence that the exercise of Eisenberg's independent professional judgment on Cerro's behalf would or would likely to be adversely affected by his representation of Hoffman. That conflict became even clearer when the value of the information implicating Hoffman increased following the death of the state's witness, Davies.

On the question of appropriate discipline, the Board takes the position that the public reprimand recommended by the referee is not sufficient for two reasons: first, a client is entitled to the "undivided loyalty" of counsel, especially in a case in which the client's liberty is at stake; second, a public reprimand is not sufficient to deter similar misconduct by Eisenberg or by other at-

torneys practicing in Wisconsin. Further, the Board notes Eisenberg's pattern of acting in the presence of conflicts of interest, citing a prior disciplinary proceeding, *State v. Eisenberg,* 29 Wis. 2d 233 (1965), in which the court reprimanded Eisenberg for creating an inference of undue influence by drafting a will for his uncle which disinherited the uncle's wife and daughter and left the entire estate to Eisenberg's mother. The Board also notes that at the time during which Eisenberg's representation of Cerro and Hoffman occurred, Eisenberg received the Board's letter of admonition concerning his representation of multiple defendants in *Gaines.*

Eisenberg contends that, if the court concludes that his conduct violated the ethical code, the public reprimand recommended by the referee is appropriate discipline. In support of his position, he cites *Disciplinary Proceedings Against Pogodzinski,* Case No. 83–1300–D, in which the court remanded the matter to the Board for the imposition of a public reprimand. Pogodzinski was found to have violated SCR 20.28 (2) by continuing to represent a client charged with conspiracy to distribute and distributing controlled substances after it had become apparent to him that in order to represent the client it would be necessary for him to impeach the credibility of three witnesses, each of whom he had previously represented on charges of possession of controlled substances. However, in *Pogodzinski* there was a stipulation between the Board and the attorney by the terms of which the parties agreed that a public reprimand should be imposed, and that was Pogodzinki's first involvement in an attorney disciplinary proceeding.

We agree with the Board that a public reprimand under the circumstances present here is not sufficient discipline. Eisenberg's first duty was to his client Cerro. That duty is described in the Code of Professional Responsibility as follows: "The duty of a lawyer, both to

his or her client and to the legal system, is to represent his or her client zealously within the bounds of the law, which includes disciplinary rules and enforceable professional regulations." SCR 20.34(1)(a). The Code further provides: "The professional judgment of a lawyer should be exercised, within the bounds of the law, solely for the benefit of the client and free of compromising influences and loyalties. Neither his or her personal interest, the interests of other clients, nor the desires of third persons should be permitted to dilute a lawyer's loyalty to a client." SCR 20.23(1). His client Cerro's freedom was at stake, but Eisenberg made no attempt to avoid a conflict of interest which prevented him from vigorously and effectively representing him. We customarily deal severely with attorney misconduct involving the mishandling of client funds, and here, because of Eisenberg's conduct, Cerro stood to lose something of considerably greater value than money, his liberty.

Eisenberg knew, prior to undertaking Hoffman's representation, that Cerro had access to information concerning a murder which would or could be used to obtain substantial prosecutorial consideration on Cerro's pending felony charges. Nevertheless, Eisenberg undertook to represent Hoffman, who was charged with that murder, despite the apparent conflict of interest. Eisenberg continued to represent both Cerro and Hoffman after the conflict of interest became even more apparent when the value of the information available to Cerro increased significantly by virtue of the death of the state's witness in its case against Hoffman. The conflict was irreconcilable: to use the information for Cerro's benefit would be adverse to Hoffman's interests; not to use it would adversely affect Cerro.

We accept the findings and conclusions of the referee in this matter, but we reject his recommendation of disci-

pline as disproportionate to Eisenberg's misconduct. Eisenberg violated his duty to zealously represent Cerro. Further, Eisenberg previously had been the subject of an attorney disciplinary proceeding, resulting in his being publicly reprimanded, he had been privately admonished by the Board for his representation of multiple defendants in a federal criminal proceeding at the very time he undertook to represent Hoffman when he was already representing Cerro, and he has made his contempt for the attorney ethics code and the disciplinary body a matter of public record. In light of these circumstances, Eisenberg's misconduct warrants discipline more severe than a public reprimand.

IT IS ORDERED that the license of Donald S. Eisenberg to practice law in Wisconsin is suspended for a period of six months, commencing April 1, 1984.

IT IS FURTHER ORDERED that, within 60 days of the date of this order, Donald S. Eisenberg pay to the Board of Attorneys Professional Responsibility the costs of this disciplinary proceeding in the amount of $9,747.46, provided that if the costs are not paid within the time specified, the license of Donald S. Eisenberg to practice law in Wisconsin shall be revoked forthwith.

Abrahamson, J., took no part.