IN the MATTER OF DISCIPLINARY PROCEEDINGS AGAINST Donald S. EISENBERG, Attorney at Law.

Supreme Court

*No. 82–1914–D. Filed December 5, 1985.*
(Also reported in —— N.W.2d ——.)

PER CURIAM. *Petition for reinstatement; reinstatement denied.*

The court is again asked to reinstate the license of Donald S. Eisenberg to practice law in Wisconsin, which had been suspended for a period of six months, effective April 1, 1984, for unprofessional conduct. *Disciplinary Proceedings Against Eisenberg,* 117 Wis. 2d 332, 344 N.W.2d 169 (1984). We denied the petition for reinstatement filed at the expiration of that suspension for the reason that Mr. Eisenberg had engaged in the practice of law while his license was suspended. *Disciplinary Proceedings Against Eisenberg,* 122 Wis. 2d 627, 363 N.W.2d 430 (1985). However, having concluded that the operation of our rule, SCR 22.28(8), prohibiting an attorney from again petitioning for reinstatement within one year following the denial of a petition for reinstatement would result in too severe discipline for his failure to comply with our suspension order, we permitted Mr. Eisenberg to apply again for reinstatement 90 days following the date of our order of denial. Mr. Eisenberg did so on June 3, 1985.

We determine that, because he again engaged in the practice of law after we had denied his first petition for reinstatement and because his petition for reinstatement did not fully comply with our rule, SCR 22.28(4)(k), requiring a petitioner to fully describe all business activities during the period of suspension, Mr. Eisenberg has failed to fully comply with the terms of the court's order suspending his license and has failed to demonstrate that he is entitled to the reinstatement of his license to practice law in Wisconsin.[1] Accordingly, we

---

[1] SCR 22.28(6) provides: "In proceeding upon a petition for reinstatement, the petitioner has the burden of demonstrating by clear and convincing evidence possession of the moral character to practice law in this state and that the petitioner's resumption of the practice of law within this state will not be detrimental to the integrity and standing of the bar or the

deny Mr. Eisenberg's petition for reinstatement. Pursuant to our rule, SCR 22.28(8), he is prohibited from again petitioning for reinstatement within one year following the date of this order.

The facts on which we base our decision are not in dispute. On May 10, 1985, Mr. Eisenberg met with the president of Equities International, Inc., at Eisenberg Law Offices, at which time he was informed that Equities International wanted to acquire controlling interest in Strong's Bank in Dodgeville. Three days later the company's president hired Mr. Eisenberg to assist the company in doing so, and a letter from the president to Mr. Eisenberg dated May 22, 1985, confirmed that Mr. Eisenberg had been hired as "legal counsel" for the corporation. The letter also indicated that Mr. Eisenberg had told the president of his status as a suspended lawyer.

On the evening of the day he was hired, Mr. Eisenberg met with the company president and persons from Strong's Bank, at which time he and the company's president were elected directors of the bank and participated in a directors' meeting. In addition, Mr. Eisenberg was retained as "general counsel" by Strong's Bank. A subsequent letter from the bank's president outlined Mr. Eisenberg's duties as follows: "Your duties will be as we discussed in regard to the collection of accounts, the everyday answering of legal questions as they may appear, and whatever other matters properly come to the Bank's attention in a legal matter."

On May 23, 1985, Mr. Eisenberg and several other bank directors attended a meeting at the offices of the Federal Deposit Insurance Corporation (FDIC) in Chicago, the subject of which was a cease and desist order

administration of justice, or subversive of the public interest. The petitioner shall also demonstrate by clear and convincing evidence full compliance with the terms of the order for discipline and the requirements of SCR 22.26."

proposed by the FDIC and directed to the bank and its directors, including Mr. Eisenberg. At that meeting, Mr. Eisenberg identified himself as general counsel for the bank and acted as spokesman for the bank and its directors. Mr. Eisenberg stated, however, that he was not acting and could not act as a lawyer but could act as general counsel. During the meeting Mr. Eisenberg discussed the terms of the proposed FDIC order, referred to FDIC rules and regulations and suggested a change in the order pertaining to acknowledgement of wrongdoing by the bank's directors to conform more closely to the language of the FDIC rules and regulations.

Subsequently, Mr. Eisenberg resigned as director and general counsel for the bank after his removal was requested by the Wisconsin Banking Commissioner. By letter of May 30, 1985, Mr. Eisenberg submitted a request to the bank for "corporate counsel fees for the period May 13 through May 28, 1985, inclusive," stating, "These fees are in conjunction with my being corporate counsel for the Bank and include all services regarding the meeting at the FDIC, etc." The bank issued a check for "Legal Fees" to Mr. Eisenberg in the amount of $2,300.

In June, 1985, Mr. Eisenberg attended two meetings at the offices of a Madison law firm, both of which concerned the structuring of transactions by which Equities International or related interests would gain controlling interest in the bank by purchasing a majority of its stock. At both meetings Mr. Eisenberg identified himself as general counsel for Equities International and stated that he could not act as a lawyer but could act as corporate counsel. At those meetings Mr. Eisenberg participated in discussions concerning the structure of the proposed transactions, reviewed various documents pertaining to the closing of the transaction by which bank stock was purchased, including a sale agreement,

an escrow agreement, an agreement of assignment without recourse, and a confidentiality agreement. Mr. Eisenberg had changes made in the language of those documents and approved them in final form for the signature of the president of Equities International.

Mr. Eisenberg stated that, prior to accepting employment as legal counsel for Equities International and as general counsel for Strong's Bank, he reviewed SCR 22.26(2), which prohibits a suspended attorney from engaging in the practice of law,[2] as well as several reported decisions of the court, but did not consider either the history of that rule or the statute prohibiting the unauthorized practice of law, sec. 757.30(2), Stats.[3] Mr. Eisenberg consulted by telephone with a Madison attorney and an attorney in Florida, both of whom advised him that SCR 22.26(2) permitted him to act as corporate counsel, although neither submitted a written opinion on the subject.

Mr. Eisenberg's petition for reinstatement was filed with the court on June 3, 1985. Mr. Eisenberg stated that he had drafted the reinstatement petition between May 6 and May 10, 1985, and signed it on May 15, 1985.

---

[2] SCR 22.26(2) provides: "A suspended or disbarred attorney may not engage in the practice of law or in any law work activity customarily done by law students, law clerks or other paralegal personnel, except that he or she may engage in law related work for a commercial employer not itself engaged in the practice of law."

[3] Sec. 757.30(2), Stats., provides: "Every person who appears as agent, representative or attorney, for or on behalf of any other person, or any firm, copartnership, association or corporation in any action or proceeding in or before any court of record, court commissioner, or judicial tribunal of the United States, or of any state, or who otherwise, in or out of court, for compensation or pecuniary reward gives professional legal advice not incidental to his or her usual or ordinary business, or renders any legal service for any other person, or any firm, copartnership, association or corporation, shall be deemed to be practicing law within the meaning of this section."

When filed with the court on June 3, 1985, the petition, although purporting to describe Mr. Eisenberg's business activities "during his period of suspension," omitted any mention of his employment with Equities International or Strong's Bank. Even as of the day it was signed, the petition omitted any mention of that employment, even though Mr. Eisenberg had accepted employment with both companies on May 13, 1985, and had attended at least one business meeting in that regard prior to the date he signed the petition.

On June 14, 1985, the Board of Attorneys Professional Responsibility (Board) asked Mr. Eisenberg to describe in detail the nature of his business activities during the entire period of suspension, which he had not done for the period from May 15, 1985, when he signed the petition, to June 3, 1985, when he filed it with the court. By response dated June 20, 1985, Mr. Eisenberg stated for the first time that he had been employed by "a commercial employer" and "a bank" during part of May and June, 1985. The Board then requested further information, and Mr. Eisenberg responded on June 28, 1985, disclosing his employment and his activities on behalf of the two enterprises.

In this regard, Mr. Eisenberg testified at the hearing on his reinstatement petition that, were his petition to have reported on the entire 90-day extended suspension period, it could not have been filed until after the expiration of the suspension period, and notice that the petition had been filed could not have been published in the July, 1985 *Wisconsin Bar Bulletin* because the actual text of the petition was needed by mid-May in order to be published in the July issue. Mr. Eisenberg had moved the court on March 7, 1985, to shorten the 90-day waiting period to 75 days in order that the required notice of the filing of the petition could be published in the July, 1985 issue, rather than in the August, 1985 issue. The court denied the motion on April 9, 1985.

However, the text of a reinstatement petition is not required for publication of the notice; SCR 22.28(5) provides that the Board's administrator must publish "a notice containing a brief statement of the nature and date of the discipline and the matters required to be proved for reinstatement." The text of the notice was given to the *Wisconsin Bar Bulletin* staff following the June 3, 1985 filing, and the notice was published in the July, 1985 issue.

Mr. Eisenberg's reinstatement petition was initially considered by the District 9 Professional Responsibility Committee upon referral from the Board of Attorneys Professional Responsibility. Following a hearing, that committee concluded that, while Mr. Eisenberg's employment with Equities International and Strong's Bank did constitute the practice of law, Mr. Eisenberg had erroneously concluded that it did not, based upon his and other attorneys' understanding of SCR 22.26(2), which permits a suspended or disbarred attorney to "engage in law related work for a commercial employer not itself engaged in the practice of law." The committee concluded that the rule is ambiguous and permits the interpretation given by Mr. Eisenberg that a suspended attorney may act as in-house counsel for a commercial employer not engaged in the practice of law. The committee then recommended reinstatement of Mr. Eisenberg's license on the basis that his only "indiscretion" during the period of suspension was based on a good-faith belief that he could act as corporate counsel for business entities during the suspension.

However, upon review of the committee's report and recommendation, the Board concluded that because he practiced law during the period of suspension and filed a prematurely drafted application for reinstatement, Mr. Eisenberg failed to demonstrate that he had fully complied with the court's suspension order. The Board also

concluded that by omitting any reference to his activities on behalf of Equities International and Strong's Bank in his sworn petition filed with the court, which was incorrect as of the date he signed it and contained substantial and material omissions concerning his business activities as of the date he filed it, Mr. Eisenberg failed to demonstrate that his conduct since the imposition of discipline had been exemplary and above reproach. Concluding that Mr. Eisenberg failed to meet his burden under SCR 22.28(6), the Board recommended that Mr. Eisenberg's petition for reinstatement be denied.

In his response to the Board's report and adverse recommendation, Mr. Eisenberg argued that his work for Strong's Bank did not constitute the practice of law, as he performed no legal work for the bank. He argued that, while he may have been hired as general counsel, he was primarily invited to become a director of the bank. He further contended that SCR 22.26(2) permits a suspended attorney to engage in legal work for a commercial employer not itself engaged in the practice of law. On the basis of what he considered the unambiguous wording of that rule, as well as the advice obtained from two other attorneys, Mr. Eisenberg argued that he had a good faith belief that his employment for the bank and Equities International was permitted.

The present rule, SCR 22.26(2), was adopted in 1983 by combining two former rules:

(Former) SCR 22.26(2): "A suspended or disbarred attorney may not engage in the practice of law or in any law work activity customarily done by law students, law clerks or other paralegal personnel."

(Former) SCR 11.04(2): "A suspended or disbarred lawyer during his or her suspension or disbarment may not engage in any law work activity, except for a commercial employer not itself engaged in the practice of law. Law work activity shall include, in the case of a suspended or disbarred attorney, matters associated with the practice of law, notwithstanding the fact that the

work may customarily be done by law students, law clerks or other paralegal personnel."

Mr. Eisenberg contended that the present rule, as well as its predecessors, generally prohibits a suspended lawyer from engaging in the practice of law and any law work activity but, by excepting "law related work" or "law work activity" for a commercial employer not itself engaged in the practice of law, it permits the practice of law and law work activity when performed for a commercial employer.

Mr. Eisenberg's argument ignores the fact that the stated exception in SCR 22.26 (2) concerns "law related work," not the practice of law itself or "law work activity customarily done by law students, law clerks or other paralegal personnel." It also ignores the fact that permitting a suspended attorney to practice law for a commercial employer would be inconsistent with the statute prohibiting the unauthorized practice of law, sec. 757.30 (2), Stats. In this regard, Mr. Eisenberg took the position that the court has never attempted to reconcile SCR 22.26 (2) and this statute; indeed, he argued that the two cannot be rendered consistent.

Citing the court's concerns expressed at the public hearing on the 1983 amendment of SCR 22.26 (2), Mr. Eisenberg argued that the court itself did not understand the meaning of the rule at the time of its amendment. In this connection, he moved to supplement the record in this proceeding to include a written transcript of that public hearing. We hereby grant that motion and have considered the transcript.

Finally, Mr. Eisenberg contended that what he did on behalf of Strong's Bank was nothing more than what this court has permitted other suspended attorneys to do. He cited *State Bar of Wisconsin v. Keller,* 21 Wis. 2d 100, 123 N.W.2d 905 (1963), in support of his argument that his appearance on the bank's behalf before the

FDIC was no different from Keller's, a lay person, advising a client before the Interstate Commerce Commission. He further argued that by appearing before the FDIC he was, in effect, representing himself as a director of the bank, which he should be permitted to do. Mr. Eisenberg also cited *Disciplinary Proceedings Against [Sydney] Eisenberg,* 96 Wis. 2d 342, 291 N.W.2d 565 (1980), in which the court reinstated an attorney's license, even though he had appeared before an administrative agency on behalf of a corporation of which he was the sole stockholder.

The cases cited by Attorney Eisenberg, however, are distinguishable. Mr. Eisenberg appeared before the FDIC in a representative capacity, whether or not he also appeared as an individual. Further, the court reinstated Sydney Eisenberg's license primarily because the reinstatement process had taken two years, and the court considered any further "suspension" to be unwarranted.

The Board argued that Mr. Eisenberg's work for Equities International and Strong's Bank constituted the practice of law because it involved his giving legal advice for compensation. In support of its position, the Board cited the unauthorized practice of law statute, sec. 757.30 (2), Stats., and noted that the court has referred to that statute in cases in which a suspended attorney had been found to have engaged in the practice of law while his license was suspended. *See Disciplinary Proceedings Against [Sydney] Eisenberg, supra.*

The Board also disputed Mr. Eisenberg's assertion that the exception in SCR 22.26 (2) permits a suspended attorney to practice law for a commercial employer not itself engaged in the practice of law. Arguing that the rule is consistent with the unauthorized practice statute, the Board noted that one of the predecessors to SCR 22.26 (2), SCR 11.04, had originally been adopted as sec. (Rule) 256.287, Stats. 1975, while the unauthorized

practice statute was then sec. 256.30, Stats. 1975. Both
provisions were subsequently renumbered, and the
court's rule was ultimately incorporated into the Su-
preme Court Rules as SCR 11.04(2). From this the
Board contended that SCR 22.26(2) is consistent with
sec. 757.30(2); indeed, the court's rule supplemented
the unauthorized practice statute by adding restrictions
applicable only to persons who had been licensed to prac-
tice law but whose license has been suspended or re-
voked. The Board further argued that Mr. Eisenberg's
interpretation of SCR 22.26(2) to authorize him to per-
form legal work for a corporation would lead to the
absurd result that an attorney whom the court has found
unfit to practice law would be the only person entitled to
practice law without regulation by the court.

In response to Mr. Eisenberg's contention that he had
had no notice that his activity on behalf of Equities In-
ternational and Strong's Bank was prohibited, the Board
cited *State ex rel. Junior Asso. of Milwaukee Bar v. Rice,*
236 Wis. 38, 294 N.W. 550 (1940), *State Bar v. Keller,*
*supra, State ex rel. State Bar v. Keller,* 16 Wis. 2d 377,
114 N.W.2d 796 (1962), and *Disciplinary Proceedings*
*Against [Sydney] Eisenberg, supra,* in which the court
addressed the issue of the unauthorized practice of law.
The Board further cited a letter it had sent to Mr. Eisen-
berg at the time of his suspension, stating, in part:

"I encourage you to avoid placing yourself in situations
where members of the public or the legal profession
might construe that you are continuing to practice law.
The best way to do this is to stay away from your office
and the courthouse.

". . .

"Should you have any questions concerning this matter,
please feel free to contact me [resolution counsel]."

The Board asserted that Mr. Eisenberg had consulted
with Board staff "frequently" during the period of sus-

pension but not concerning the appropriateness of his activities at issue here.

We conclude that Mr. Eisenberg's petition for reinstatement should be denied not only because he engaged in the practice of law while his license was suspended by the court, but also because the affidavit he filed with the court concerning his activities during the suspension was inaccurate as of the date he signed it, in that it failed to disclose his acceptance of employment with the two businesses, and the reinstatement petition he filed with the court failed to disclose any of his busines activities during the final 21 days of the 90-day extension of the suspension period, which coincided with the entire term of his employment with the bank and a substantial portion of his employment with Equities International. Mr. Eisenberg has again failed to comply with the court's suspension order by engaging in the practice of law while his license remained suspended.

Even were we to assume that SCR 22.26(2) is susceptible of Mr. Eisenberg's interpretation that he was permitted to practice law as general counsel for the bank and the corporation, we are unable to conclude that his decision to perform legal work for the two businesses was made in good faith. Although he consulted with two attorneys on the question of the propriety of his proposed conduct, he failed to seek the advice of the one entity best qualified to advise him—the Board of Attorneys Professional Responsibility. In light of the fact that the initial suspension of his license was extended for 90 days by reason of his having practiced law in two federal courts while his license was suspended, his failure to consult with the Board prior to accepting employment with the bank and Equities International is indefensible.

As this is the second failure of Mr. Eisenberg to comply with our order of suspension and our rules governing suspended attorneys and establishing requirements for

reinstatement, we see no reason to lessen the effect of our rule, SCR 22.28, prohibiting a suspended attorney from again petitioning for reinstatement within one year following the denial of a petition for reinstatement. Indeed, Mr. Eisenberg's conduct transcends a failure to comply with the court's rules and order; it constitutes professional misconduct.

IT IS ORDERED that the petition of Donald S. Eisenberg for the reinstatement of his license to practice law in Wisconsin is denied.

ABRAHAMSON, J., took no part.