IN the MATTER OF the REINSTATEMENT OF the LICENSE OF Donald S. EISENBERG to Practice Law in Wisconsin.

Supreme Court

*Nos. 82–1914–D, 89–0596–D. Filed December 7, 2000.*

2000 WI 125

(Also reported in 619 N.W.2d 530.)

¶ 1. PER CURIAM. On May 18, 2000, the Board of Attorneys Professional Responsibility (Board)[1] filed its report recommending that Donald S. Eisenberg's petition for reinstatement of his license to practice law in Wisconsin be granted upon the following conditions: (1) that Mr. Eisenberg pay interest of $4583 on the amount of a fee he was previously required to repay to a former client; (2) that he be barred from having signature authority on any trust account; (3) that he complete continuing legal education credits required for reinstatement; (4) that if he returns to the practice of law, his practice be restricted to a law firm setting; (5) that he file an annual report with the Board regarding his employment status and promptly notify the Board if he changes employment; and (6) that if he returns to the practice of law, all lawyers responsible for the trust account at the firm at which he is employed be required to execute affidavits certifying that Mr. Eisenberg will exercise no management or control over the law firm's trust account.

---

[1] Effective October 1, 2000, Wisconsin's attorney disciplinary process underwent a substantial restructuring. The name of the body responsible for investigating and prosecuting cases involving attorney misconduct was changed to the Office of Lawyer Regulation and the Supreme Court Rules applicable to the lawyer regulation system were also revised. Since the conduct underlying this case arose prior to October 1, 2000, the body will be referred to as "the Board" and all references to Supreme Court Rules will be to those in effect prior to October 1, 2000.

¶ 2. The Board's recommendation for reinstatement followed its review of the report filed by a subcommittee of the District 9 Professional Responsibility Committee (DPRC), which after a reinstatement hearing, issued its report recommending reinstatement of Mr. Eisenberg's license to practice law. In addition, the Board of Bar Examiners has recommended that Mr. Eisenberg's reinstatement petition be granted, having determined that he has satisfied the continuing legal education requirements for reinstatement.

¶ 3. We determine, based on the unconditional recommendation of the subcommittee of the DPRC, the conditional recommendation of the Board, and the recommendation of the Board of Bar Examiners, that Mr. Eisenberg's license to practice law in this state be reinstated upon conditions identified above.[2] This court informs Mr. Eisenberg that the practice of law in this state is a privilege, not a right; we expect and demand that he not deviate from these conditions. In the past, this court has, for good reasons, denied Mr. Eisenberg's numerous petitions for reinstatement. We now grant this, his seventh, petition for reinstatement warning

---

[2] A violation of these conditions to practice law, whether it occurs in this state or elsewhere, will subject Mr. Eisenberg to the disciplinary authority of this state. See SCR 20:8.5(a).

SCR 20:8.5(a) provides:

(a) Disciplinary Authority. A lawyer admitted to the bar of this state is subject to the disciplinary authority of this state regardless of where the lawyer's conduct occurs. A lawyer allowed by a court of this state to appear and participate in a proceeding in that court is subject to the disciplinary authority of this state for conduct that occurs in connection with that proceeding. For the same conduct, a lawyer may be subject to the disciplinary authority of both this state and another jurisdiction where the lawyer is admitted to the bar or allowed to appear in a court proceeding.

him in the strongest terms possible that any future violation of the Rules of Professional Conduct or deviation from these conditions will not be countenanced.

¶ 4. Mr. Eisenberg's license to practice law was suspended in 1984 for six months as discipline for having represented two criminal defendants whose interests were adverse and for failing to protect the interest of one of those clients in a case in which that client's liberty was at stake.[3]

¶ 5. Mr. Eisenberg's first two applications for reinstatement were denied: the first, on the ground that he had engaged in the practice of law while his license was suspended;[4] and the second, because he had continued to practice law while his license was suspended and he had failed to fully describe all his business activities during the suspension.[5] Thereafter, Mr. Eisenberg's third petition for reinstatement was withdrawn. His fourth petition was remanded to the Board for further consideration because of a pending investigation into his handling of trust account funds. That fourth petition became moot when the trust account investigation resulted in a disciplinary proceeding culminating in revocation of Mr. Eisenberg's license to practice law.[6]

¶ 6. Mr. Eisenberg's fifth reinstatement petition — his first following license revocation — was denied on the ground that he had not made restitution to the

---

[3] *Disciplinary Proceedings Against Eisenberg*, 117 Wis. 2d 332, 344 N.W.2d 169 (1984).

[4] *Disciplinary Proceedings Against Eisenberg*, 122 Wis. 2d 627, 363 N.W.2d 430 (1985).

[5] *Disciplinary Proceedings Against Eisenberg*, 126 Wis. 2d 435, 377 N.W.2d 160 (1985).

[6] *Disciplinary Proceedings Against Eisenberg*, 152 Wis. 2d 91, 447 N.W.2d 54 (1989).

client whose criminal case he handled while simultaneously representing another criminal defendant with conflicting interests and on the ground Mr. Eisenberg had made statements on a television program concerning his belief in the guilt of a criminal defendant he had represented.[7]

¶ 7.   Mr. Eisenberg's sixth reinstatement petition was denied because he had failed to make restitution to or settle claims of persons injured or harmed by his misconduct, because he had expressed willingness to comply with the continuing legal education requirements for reinstatement only if he were assured that, having met those requirements, his license would be reinstated, and because he intended to practice law in Wisconsin only occasionally but maintain a trust account on his own, rather than in association with another lawyer or law firm in this state.[8]

¶ 8.   Mr. Eisenberg currently resides in the City of Orlando, Orange County, Florida, where he owns a process serving business. He intends to remain in Florida and may take the Florida bar examination or practice law there on a *pro hac vice* basis. He would like to practice law in Wisconsin occasionally with his two sons, who are Madison attorneys, and be "of counsel" to their law firm.

¶ 9.   After Mr. Eisenberg filed his seventh petition for reinstatement, the matter was referred to the DPRC for investigation; the DPRC referred the matter to a subcommittee for a public hearing and report. See SCR 22.28(5).[9] During the public hearing on the rein-

---

[7] *Reinstatement of Eisenberg*, 206 Wis. 2d 264, 556 N.W.2d 749 (1996).

[8] *Reinstatement of License of Eisenberg*, 217 Wis. 2d 526, 577 N.W.2d 626 (1998).

[9] Former SCR 22.28(5) provided:

statement petition on September 1, 1999, the subcommittee focused its inquiry on restitution, Mr. Eisenberg's understanding and attitude toward the standards that are imposed upon members of the bar, and whether he could be safely recommended to the legal profession, the courts and the public as a person fit to be consulted by others and to represent them and otherwise act in matters of trust and confidence.

¶ 10.  The restitution issue arose when Mr. Eisenberg was hired in September of 1977 to defend a client on three criminal counts; he was paid an advance fee of $10,000 for that representation. However, Mr. Eisenberg represented that client while he was also representing another client whose interests conflicted with the first client's. That conflict was the subject of the disciplinary proceeding against Mr. Eisenberg in 1984, but the issue of restitution of the $10,000 fee was not addressed in that proceeding.

¶ 11.  Mr. Eisenberg's failure to make restitution of that $10,000 fee to the first client was one of the grounds upon which the Board made its adverse recommendation regarding Mr. Eisenberg's fourth

---

(5)  The administrator shall investigate the eligibility of the petitioner for reinstatement and file a report and recommendation with the board. At least 30 days prior to the hearing on the petition before a professional responsibility committee, the administrator shall publish a notice in a newspaper of general circulation in any county in which the petitioner maintained an office prior to suspension or revocation and in the county of the petitioner's residence during the suspension or revocation and in an official publication of the state bar.

The notice shall contain a brief statement of the nature and date of suspension or revocation, the matters required to be proved for reinstatement and the date on which a hearing on the petition will be held before a professional responsibility committee. In the case of a license suspension, the hearing shall not be held prior to the expiration of the period of suspension.

reinstatement petition; this court, however, did not address that restitution issue at that time because the reinstatement proceeding had been rendered moot by the revocation of Mr. Eisenberg's license in 1989 for trust account violations.

¶ 12. This court denied Mr. Eisenberg's fifth petition for reinstatement in 1996, in part, because of his failure to repay the $10,000 fee to the first client or the client's family after that client died.

¶ 13. During the sixth reinstatement proceeding, Mr. Eisenberg paid the sum of $10,000 in restitution to the client's family; however, Mr. Eisenberg took the position that he would pay interest on that restitution only if this court ordered him to do so. This court concluded that in declining to pay any interest to the client's family on the $10,000 fee unless ordered to do so, Mr. Eisenberg failed to display a proper attitude toward the standards that are imposed on the members of the bar. SCR 22.28(4)(f).[10]

¶ 14. Following the denial of his sixth petition for reinstatement, Mr. Eisenberg offered to pay interest in the amount of $5,000 to the family. The family, however, requested a payment of $8,000 in accumulated interest.

¶ 15. At the public hearing on this most recent petition for reinstatement, Mr. Eisenberg testified that he was sorry that he had hurt his client's family and that it had not been his intention to do so. Mr. Eisenberg indicated a willingness to pay interest to the family at the statutory interest rate of 5%; however,

---

[10] Former SCR 22.28(4)(f) provided:

(4) The petition for reinstatement shall show that:

(f) The petitioner has a proper understanding of and attitude toward the standards that are imposed upon members of the bar and will act in conformity with the standards.

there was uncertainty as to the correct starting date for the interest calculation. The DPRC subcommittee calculated that the sum of $4583 was due as interest to the family accruing from the date this court stayed a prior reinstatement proceeding to the date when Mr. Eisenberg had repaid the entire principal sum of $10,000.

¶ 16. Based on Mr. Eisenberg's testimony at the public hearing that he now understands the standards that are imposed on lawyers in this state and his acknowledgement that it has taken him a long time to conquer his pride, the DPRC subcommittee concluded that Mr. Eisenberg's attitude had significantly changed, that he now appears to be truly remorseful for his past actions and is willing to subject himself to the rules of professional conduct for attorneys adopted by this court.

¶ 17. The DPRC subcommittee recommended that Mr. Eisenberg's license be reinstated citing his effort to resolve the interest issue with the client's family; his candor regarding his behavior since his license revocation, his efforts to fulfil continuing legal education requirements, and his stated intention to have only a limited law practice and no signature authority over his sons' law firm trust account.

¶ 18. The Board, upon reviewing the DPRC subcommittee's report and recommendation, concluded that Mr. Eisenberg had satisfied the requirements of SCR 22.28(4)[11] for reinstatement of his license to prac-

---

[11] Former SCR 22.28(4) provided:

(4) The petition for reinstatement shall show that:

(a) The petitioner desires to have the petitioner's license reinstated.

(b) The petitioner has not practiced law during the period of suspension or revocation.

tice law in this state. The Board determined that Mr. Eisenberg had demonstrated by clear and convincing evidence that he has the moral character to practice law in this state subject to the conditions identified above. Unlike the DPRC subcommittee's recommendation to reinstate Mr. Eisenberg's license without conditions, the Board recommended that his petition for reinstatement of his license to practice law be granted subject to the above conditions. The Board also determined that Mr. Eisenberg has currently paid all costs of these pending proceedings.

¶ 19. This court now grants Attorney Eisenberg's petition to reinstate his license to practice law in this state reiterating all the conditions identified by the

(c) The petitioner has complied fully with the terms of the order and will continue to comply with them until the petitioner's license is reinstated.

(d) The petitioner has maintained competence and learning in the law, including a list of specific activities pursued.

(e) The petitioner's conduct since the suspension or revocation has been exemplary and above reproach.

(f) The petitioner has a proper understanding of and attitude toward the standards that are imposed upon members of the bar and will act in conformity with the standards.

(g) The petitioner can safely be recommended to the legal profession, the courts and the public as a person fit to be consulted by others and to represent them and otherwise act in matters of trust and confidence and in general to aid in the administration of justice as a member of the bar and as an officer of the courts.

(h) The petitioner has fully complied with the requirements of SCR 22.26.

(i) The petitioner indicates the proposed use of the license if reinstated.

(j) The petitioner has fully described all business activities during the period of suspension or revocation.

(k) The petitioner has made restitution or settled all claims from persons injured or harmed by petitioner's misconduct or, if the restitution is not complete, petitioner's explanation of the failure or inability to do so.

304

Board in its report. For purposes of emphasis, we again caution Attorney Eisenberg that his absolute compliance with those conditions and with all rules adopted by this court governing attorneys' professional responsibility is demanded and expected. Any deviation from the conditions or the rules will not be countenanced.

¶ 20. IT IS ORDERED that the petition for the reinstatement of the license of Donald S. Eisenberg to practice law in Wisconsin is granted upon the following conditions: (1) that he pay interest of $4583 on the amount of a fee he was previously required to repay to a former client; (2) that he be barred from having signature authority on any trust account; (3) that he complete continuing legal education credits required for reinstatement; (4) that if he returns to the practice of law, his practice be restricted to a law firm setting; (5) that he file an annual report with the Board regarding his employment status and promptly notify the Board if he changes employment; and (6) that if he returns to the practice of law, all lawyers responsible for the trust account at the firm at which he is employed be required to execute affidavits certifying that Attorney Eisenberg will exercise no management or control over the law firm's trust account.

¶ 21. SHIRLEY S. ABRAHAMSON, C.J., did not participate.